[No. 5451.]
[No. 3121 C. A.]

## THE CITY AND COUNTY OF DENVER v. MAGIVNEY.

1. Cities and Towns—Defective Sidewalks—Liability.

A city must exercise ordinary care to prevent its sidewalks from becoming defective and dangerous to pedestrians, and a failure so to do will, under proper circumstances, render it liable for injuries suffered through such defects.—P. 161.

2. Same—Defects Result of Own Negligence—Negligence of Another.

When a defect in a sidewalk causing accident- and injury is the result of the city's own negligent act, a primary liability attaches against the city; but a city is not liable for injuries caused by defects resulting from the negligence of another, unless it had actual or constructive notice of the same for a sufficient length of time before the accident to have cured the defect.—P. 161.

3. Cities and Towns—Defective Sidewalks—Liability.

A water company placed a water box at the outer edge of a sidewalk, and subsequently the city widened the walk, and left the box more than two feet inside the curb, the walk being so constructed that its surface was three inches above the rim of the water box, thus causing a depression in the walk. Held, that the city, if failing to exercise reasonable care in widening and reconstructing the walk, is primarily liable for an injury to a pedestrian stepping into the depression.—P. 163.

4. Cities and Towns—Defective Sidewalks—Notice—Sufficiency of Time—Question for Jury.

A water company placed a water box in the outer edge of ·a sidewalk, and thereafter the city widened the walk, and left the box more than two feet inside the curb, the surface of the walk being about three inches above the top of the box, and, not less than one week nor more than two weeks thereafter, plaintiff was injured by stepping into such depression. Held, that the city had notice of such defect from the time the new walk was built, and assuming that the original negligence was that of the water company, still the city was liable if such notice was for a period prior to the accident sufficient to have enabled it to repair the defect, and this was a question of fact for the jury.—P. 165.

5. Appellate Practice—Instructions—Assignments of Error.

Where no exceptions were taken to the rulings of the trial court in the giving of instructions, and where appellant does

not make any specific assignments of error thereto, the objections to the instructions will not be considered.—P. 166.

*Appeal from the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Action by Adelaide F. Magivney against the city and county of Denver and The Denver Union Water Company. From a judgment for plaintiff against the city and county of Denver, the latter appeals.

*Affirmed.*

Mr. H. A. LINDSLEY, Mr. C. R. BROCK, and Mr. S. W. BELFORD, for appellant.

Messrs. RICHARDSON & HAWKINS and Mr. W. H. DAVIS, for appellee.

This action was brought by appellee against appellant and The Denver Union Water Company, to recover damages for injuries suffered through the negligence of defendants. A defective sidewalk on Fifteenth street, between Curtis and Arapahoe, in the city of Denver, was the cause. The width of the sidewalk at the point where the accident took place, as originally constructed, proved insufficient for the convenience of the public, because of the city's largely increased population. Hence, afterwards, and a short time prior to the accident, the city itself, through its board of public works, extended the sidewalk twenty-seven or twenty-eight inches into the street, constructing such addition thereto by the use of cement.

Before such enlargement of the sidewalk, and probably several years—the date is not definitely fixed—defendant, The Union Water Company, had placed at this point what is called a "water box"; that is, a small iron cylinder about three and one-half

inches in diameter, of sufficient depth to receive a
service pipe at the bottom, which in turn connected
with the water main of said company and also with
a pipe or pipes leading into the adjacent building.
This cylinder or box contained a contrivance called
a stop-cock, by means of which the water could be
turned on or cut off from the building. The top of
the water box was ordinarily covered by a metal
cap about three-quarters of an inch in thickness, so
constructed as to fit over the same. This metal cap,
which, in the present instance, should have been
cylindrical in form, projected a little beyond the rim
of the box throughout its entire circumference; and
when the same was properly in place, the upper side
thereof was intended to be flush with the upper sur-
face of the sidewalk.

The water box was originally placed adjacent to
the curb; but upon the widening of the sidewalk it
was left twenty-seven or twenty-eight inches inside
of the curb, and in such a position as to be constantly
under the feet of pedestrians passing to and fro.

The cement addition to the sidewalk was so con-
structed by the city that its surface was three inches
above the rim of the water box; so that, even with the
cap or cover in place, there would have been a hole
upwards of two inches in depth. This resulted in
two serious conditions, viz.: In the first place, such a
depression in the sidewalk was a constant menace
and danger to people using the same; in the second
place, it interfered seriously with the proper use of
the water box itself. The cap or cover of this box
was connected with a bolt extending downward in-
side and along the edge of the cylinder through a
small projecting iron ring, a lug attached to the bot-
tom of the bolt so that the cap could not be removed;
but when unscrewed it could be lifted just enough
to clear the surface of the sidewalk and revolve,

leaving an opening for insertion of the key and manipulation of the stop-cock; but with the surface of the cover two inches below the sidewalk, manifestly this could not be done.

At the date of the accident no cap was in place, nor had one been in place for a considerable period prior thereto. The cylinder or water box was therefore uncovered and open. Just how long it had been so uncovered does not appear; but it was filled with debris to within one inch of the top. Thus a depression or hole was made in the sidewalk about seven inches in diameter at the top, five inches wide at the bottom, and three inches in depth.

Plaintiff, in passing along the sidewalk about seven o'clock in the evening, inadvertently stepped into this hole and was thrown violently to the ground, suffering the injuries complained of. There was at this point no barrier, light or signal, or other indication of danger, to apprise people of the hole or depression and thus prevent accidents.

The action was brought against The Denver Union Water Company, as well as against appellant, but upon the trial and at the close of the evidence, the jury were instructed to find for the water company. They, however, returned a verdict against the city for $2,000.00, upon which the judgment under review was entered.

Two of the instructions given at the request of appellant, and considered in the opinion, are as follows:

4. "The court instructs the jury that you should find for the defendant, the city of Denver, unless you believe from the evidence that the city of Denver negligently constructed and maintained the sidewalk in question, or caused the removal of the top or cap from the water box below said sidewalk, or had notice of its removal, either actual or con-

structive, for such a length of time as would have enabled the defendant, the city of Denver, to have repaired it.

5. "The court instructs the jury that if the plaintiff fails to show notice to the city of Denver, either actual or constructive, of the defective condition of said sidewalk at the point where the accident occurred, for such time prior to the accident as to have enabled said defendant to have repaired the defect, your verdict should be for defendant."

Mr. Justice Helm delivered the opinion of the court:

It is hardly necessary to say that by law the duty is devolved upon the city of Denver to exercise ordinary care in preventing the sidewalks from becoming defective and dangerous to pedestrians; also, that a failure by the municipality so to do will, under proper circumstances, render it liable for injuries suffered through such defects. Nor need we dwell upon the following additional legal propositions, viz.: When a defect in the sidewalk causing accident and injury was the result of the city's own negligent act, a primary liability against the city attaches therefrom. But when such defective condition of the sidewalk results from the negligent act of another, no liability attaches against the municipality in the first instance; in order to hold the city responsible in damages for injuries suffered thereby, plaintiff must prove that the city had actual or constructive notice of the defective condition for a sufficient length of time before the accident to have cured the defect.— *City v. Dunsmore,* 7 Colo. 328; *City v. Dean,* 10 Colo. 377; *City v. Williams,* 12 Colo. 476; *Cunningham v. Denver,* 23 Colo. 21.

The present investigation is practically limited to the single subject of the city's negligence, either

primary or secondary, in the premises. Counsel for the city do not claim that the depression or hole into which plaintiff stepped was not a dangerous defect in the sidewalk; nor do they contend in argument that plaintiff was guilty of contributory negligence. The ''main point'' in the case, according to counsel's contention, is that the evidence fails to show ''that appellant was responsible for the defect, or that at or before the time of the injury it had knowledge, either actual or constructive, of the defective sidewalk.'' Upon this promise they base practically their entire argument. It will be observed that the language employed by them charges a failure of evidence to support either of two propositions, viz.: first, that the city was itself responsible for the defect in the sidewalk; or second, that the city had notice or knowledge of the same for a sufficient length of time before the accident, if at all.

The original placing of the water box at the outer edge of the sidewalk, as it then existed, was by defendant, The Denver Union Water Company. But the widening of the sidewalk and the construction of the cement addition thereto was by the city, through its board of public works. As the box was originally placed, in so far as the record informs us, it was not dangerous. But by the subsequent action of the city in enlarging the sidewalk, it was left more than two feet inward from the curb and at a point where people were constantly passing and repassing.

Moreover, by placing the surface of the cement walk three inches above the top of the open cylinder or box, the city not only created an unseemly and dangerous hole or depression, but it made practically impossible the use of the water box in the manner intended; that is to say, by reason of this act it became impossible to elevate the cap or cover of the box, without severing the bolt and thus injuring the

apparatus, sufficiently for it to revolve above the surface of the sidewalk and give the requisite access to the stop-cock.

We have no explanation touching the absence of the cap from the water box at the time of the accident, though it would seem from the accumulation of debris in the box that such absence might have existed for a considerable period. But it is sufficiently clear that whatever negligence, if any, there may have been in the original placing of the water box, it was the act of the city in enlarging and reconstructing the sidewalk in the manner it did that produced the dangerous depression or hole, by means of which plaintiff was injured. That is to say, it was the act of the city in widening the sidewalk, thus bringing the position of the water box over two feet towards the middle thereof, and then reconstructing the sidewalk as it did, that produced the defect and made possible the accident.

It is not disputed either by evidence or by counsel that the municipal board of public works made the changes and performed the acts in question. It follows, therefore, that the city was primarily liable for the injury suffered by plaintiff, provided the jury found that in the widening and reconstructing the sidewalk it did not exercise reasonable or ordinary care.

But counsel for the city claim that plaintiff is not in a position to invoke the benefit of this liability. They say that the complaint does not charge the city with any such original negligence or responsibility; that the creation of the dangerous condition in the sidewalk is by this pleading attributed to defendant, the water company; and that the only negligence pleaded against the city consists in permitting, with knowledge thereof, the dangerous condition thus created by the water company, to remain when the

same might have been cured and the accident prevented.

This argument of counsel is plausible and would, under proper circumstances, be entitled to serious consideration. But it is doubtful if appellant should be permitted to rely upon the objection. In various ways during the trial both parties treated the question of the city's negligence and responsibility for the original defect, as fairly in issue. No objections were interposed or exceptions taken to the introduction of testimony upon this subject; nor was any proper assignment of error made touching such introduction. Counsel for the city themselves prepared and asked an instruction which was given, clearly and specifically charging the jury with reference thereto.

By this portion of the charge the question of negligent construction of the sidewalk, as well as of negligent removal of the top or cap from the water box by the city, was, at the specific instance and request of the city's counsel, submitted to the jury. And finally, upon the argument here, as we have seen, counsel include this as one of the questions to be determined by us on the evidence. Under these circumstances, we would hesitate to reverse the judgment upon the point thus urged, even if its affirmance depended solely thereon.

But in our opinion it is unnecessary to rest the decision upon the city's negligence in constructing the sidewalk. Let us assume that the original negligence was that of the water company in the placing of the water box. The city, as we have seen, built the sidewalk around this box; and when the city did so, it necessarily became aware of the depression or hole therein and the danger arising therefrom. And even if we could exonerate the city from all original responsibility, the knowledge of the defect

was certainly co-existent with the laying of the sidewalk. But this was "a week or two before the accident"; so we must assume that the city had notice of the defective condition at least a "week or two" before plaintiff was injured.

And this phase of the case was properly submitted to the jury. Defendant's instruction No. 5, also given, covers the subject of the city's liability where it receives notice of a defect created by another and allows the same to remain. The jurors were thus, *at the instance of the city,* carefully told that before plaintiff could recover she must have proven notice to the city of the specific defect in the sidewalk for a period prior to the accident sufficient to have enabled the municipality to repair the same.

As we have seen, no doubt can exist touching possession by the city of this notice or knowledge. The fact that at the time of the accident the water box had become filled with debris to within one inch of the top, while of but little evidential importance, nevertheless tends slightly to show that the box had been allowed to remain in an open, uncovered and exposed condition for a considerable time prior to the laying of the new sidewalk.

But certain it is, that the knowledge of the city touching the defect in the sidewalk was acquired not less than one or two weeks prior to the accident. And therefore the present inquiry narrows to the single question: Ought the city to have cured the defect during that period and before plaintiff was injured? This question was peculiarly one for the jury under the instructions referred to. And in our opinion an affirmative finding by that body in the premises was amply warranted. The defect itself was serious; it existed at one of the busiest points in the city; a point where hundreds, if not thousands, of people were passing and repassing every twenty-

four hours; it was a constant menace to the safety of these people, and its continuance for any considerable time after notice was inexcusable.

In view of the foregoing, it is unnecessary for us to separately or further consider the argument of counsel that there is no evidence in the record of notice to or knowledge by the city touching the defect in the sidewalk. And the main contention urged on behalf of defendant must be denied.

We do not deem the remaining objections urged of sufficient merit to require argument. These objections all relate to the charge; and they are either answered by the foregoing discussion or obviated by other considerations. Besides, as to some of them, no exceptions were taken to the ruling of the trial court, and as to all of them, no specific assignments of error were made in this court. The judgment will be affirmed.                                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concur.

