No. 14,430.

ISON ET AL. AS SOUTH DENVER COAL COMPANY *v.* STEWART.
(94 P. [2d] 701)

Decided September 25, 1939.

Messrs. BERMAN & HOLLAND, Mr. JOSEPH N. LILLY, for plaintiffs in error.

Mr. ANTHONY F. ZARLENGO, Mr. DON D. BOWMAN, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

STEWART, defendant in error, who was plaintiff below, recovered judgment against plaintiffs in error, defendants below, in the sum of $5,000 for personal injuries

sustained by him in an automobile accident caused, as alleged, by the negligent driving of a truck belonging to defendant Klaversma by defendant Ison, who was the admitted servant of Klaversma. Reversal of the judgment is sought on a writ of error. Reference will be made to the parties as they appeared below, or by name.

Klaversma, doing business as the South Denver Coal Company, had for some time employed several men with trucks to transport coal from northern Colorado mines to Denver. About two o'clock in the afternoon of October 20, 1936, defendant Ison was returning to Denver on North Federal boulevard with about four and one-half tons of coal on the Klaversma truck. At the same time Stewart was driving north in a Dodge sedan on the same highway. He intended making a left turn into a road leading to Westminster, which road intersected the boulevard at a point about three and a half miles north of the Denver city limits. The truck was one of several vehicles in a line of traffic approaching Denver. Because of the traffic, Stewart had brought his car to a complete stop, with the front wheels turned slightly to the left, preparatory to proceeding into the side road after the traffic had passed. The line of traffic coming toward Stewart was proceeding on a down grade from the top of what is known as "Mushroom Hill," a long hill immediately to the north of the intersection. It was snowing or sleeting and the road was admittedly slippery. The United States weather bureau report of that date shows that four and a half inches of snow fell during the day.

According to the testimony of two eyewitnesses who had stopped their cars near the intersection—one going east and the other proceeding west on the side road—Ison turned his truck to the left in attempting to pass the vehicle ahead of him, and in doing so crashed head-on into Stewart's car, pushing it about 175 feet south, where both vehicles went into the ditch on the east side of the boulevard.

Dr. Knock, called by plaintiff as a witness, testified that he had "been very severely injured, the entire body was covered with contusions and abrasions; both eyes blackened; he was in great pain; he complained of pain practically in every part of his body; there was obviously a chest injury, and an injury about the right knee joint. X-rays were taken as soon as condition permitted, verifying the fact he had a fracture of the patella or knee cap, and also a fracture of the main bone of the leg, extending into the knee joint. Additional pictures were taken the next day and verified the fact he had the second rib on either side broken. There was a fracture of the breast bone or sternum, which did not show in the picture due to the difficulty in placing him in the proper position, but the diagnosis of that was very evident from physical examination."

Stewart prayed for $15,000 damages, which amount included expenses incurred by him for medical and hospital services, together with loss of salary for six months at $250.00 a month, amounting to about $2,600.

Ison testified that Stewart, when about 75 feet south of the intersection, made a left turn without signaling, "and he came directly across in front of the path of the truck, and the righthand front corner of the car struck the righthand front corner of the truck."

The twenty-two assignments of error are argued under the following heads: 1. Error in permitting mechanics to testify as to the manner in which collision occurred. 2. Error in striking affidavit of a juror concerning alleged misconduct of the jury. 3. Refusal of trial court to grant a new trial because of newly discovered evidence. 4. Error in refusing to separate causes of action. 5. Error in refusing and giving certain instructions. 6. Excessive verdict.

1. Two automobile mechanics, whose qualifications as such are not challenged, were asked the question, "In your opinion where was the car hit?" They answered: "Hit on the front of the car." "It couldn't

have been hit any other way, but the front." Defendants' objection does not concern the qualifications of these witnesses as experts, but they urge that the mechanics were usurping the function of the jury in giving their opinion on an ultimate fact in the case. In other words, it was a matter exclusively for the jury to determine, as a fact, what part of the car was hit. No absolute general rule can be laid down covering situations of this character which would be fair in all instances. In an endeavor to ascertain the cause of, and circumstances attending, an accident such as is here involved, it would seem to be logical and reasonable—where a proper foundation therefor has been laid—to allow men who have had years of experience in repairing wrecked automobiles, who have had full opportunity to make inspection, and who are acquainted with the conditions resulting from an auto accident, to give in evidence their opinions of what occurred at the time of a collision. In this case both mechanics had full opportunity to examine Stewart's car. Preliminary to the question above asked, witness Burrows stated, "The damage to the car. Well, the motor was pushed clear back into the cowl board; I mean the partition between the driver and the motor." Plaintiff's exhibits 1, 2, and 3, photographs of plaintiff's car taken after the collision, certainly support this testimony better than could any oral statement. The jury, in company with the trial judge, viewed the wrecked car. As noted above, defendant Ison testified that "the righthand front corner of the car struck." Finally, on this point it is to be noted, that no attempt was made to weaken this testimony by cross-examination of these mechanics. All of the physical facts support their conclusions. Possibly the province of the jury may have been invaded by this procedure, but certainly it was not usurped, and the court did not abuse its discretion in permitting the testimony to stand.

■ One of the affidavits of a juror, to the striking of which defendants complain, and which was filed in

connection with their motion for a new trial, was to the effect that affiant with other of the jurors, without permission of the court, visited the scene of the accident during a recess in the trial, and it is contended that this constituted prejudicial error. In support of this contention defendants cite our ruling in the recent case of *Wharton v. People,* 104 Colo. 260, 90 P. (2d) 615. This was a criminal case and we remanded the cause with directions to proceed with a determination of the questions raised by the affidavit of one of the jurors which disclosed the fact that he allegedly had been physically and mentally coerced into agreeing to the verdict returned in that matter. There is no similarity between that case and the one at bar. It is true there are authorities which hold that an unauthorized viewing of the premises by members of the jury is ground for a new trial, and it is so held in the case of *Schneider v. Moe,* 151 Ore. 353, 50 P. (2d) 577. In that case the court discusses the rule in a well-reasoned opinion. Defendants quote from the syllabus, but the writer of the opinion quotes from an earlier Oregon case, the following: "This rule must be given a reasonable operation and not be applied where there is only a possibility that the result was influenced by the alleged misconduct."

After reading the testimony of the two principal eyewitnesses in the case at bar, we believe the possibility of a different verdict in the event of a new trial is so remote as to be nil, and are of the opinion that the case is not one justifying an exception to the general rule, that affidavits of jurors are inadmissible to impeach their verdicts, which has so generally been followed in this jurisdiction. *Boyles v. People,* 90 Colo. 32, 6 P. (2d) 7.

3. The purported newly discovered evidence upon which reliance is placed as a ground for the granting of a new trial is that plaintiff's witness O'Keefe had a criminal record, consisting of several convictions for violation of the intoxicating liquor laws during prohibition

days. No charge was or is made that this witness testified falsely. His evidence was merely corroborative of that of witness Cotner, and of the physical facts generally in the case. Admitting the possibility of impeachment of the witness by a presentation of the new evidence there is no probability that it would have changed the result of the trial. Further there is no showing of diligence on the part of defendants in discovering this evidence, and we cannot believe they were prejudiced by the ruling of the trial court on this specification.

4. There was no error in the court's refusal to separate the causes of action because Ison was the servant and Klaversma the employer. The relationship being admitted, the inclusion of Ison as a defendant in the only substantial cause of action arising out of the accident, if error, was entirely harmless.

5. Error is assigned to the refusal of the court to give tendered instructions and to certain of those given. After a painstaking consideration we are convinced that the court's instructions were complete and comprehensive and that they fully covered the law applicable to the presented facts. Some were particularly favorable to defendant; specifically, those relating to contributory negligence, it being extremely doubtful whether there was any competent evidence justifying the giving of instructions on that subject. The tendered instructions, so far as they were correct statements of the applicable law, were covered by the given instructions, and under the established rule the refusal to give them did not constitute error.

6. The verdict was not excessive. Actual damages in the sum of $2,600 evidently was established to the satisfaction of the jury, and its allowance of damages for plaintiff's pain and suffering in the sum of $2,400 clearly was reasonable in the light of the evidence, and affords no basis for a charge of passion and prejudice on the part of the jury. A like assignment was presented in the case of *Knaus v. Yoder*, 98 Colo. 1, 52 P.

(2d) 1152, where a verdict was returned in the sum of $8,750 for damages resulting from an automobile collision. In overruling the assignment, we said: "It's [the jury's] discretion was to be exercised in consideration of all the circumstances of the case, and unless the verdict, in its amount, clearly reflected prejudice or corruption and disclosed a result, other than that of honest deliberation, it will not be disturbed." That pronouncement is applicable here.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BURKE concur.