## No. 16,695.

CITY AND COUNTY OF DENVER *v*. FARMER.
(244 P. [2d] 1086)

Decided May 5, 1952. Rehearing denied June 2, 1952.

Mr. PIERPONT FULLER, Mr. ABE L. HOFFMAN, Mr. BURTON CRAGER, for plaintiff in error.

Mr. WILLIAM H. SCOFIELD, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

ON May 16, 1950, defendant in error, as plaintiff, obtained a judgment on a jury's verdict in the sum of $1,-331.75 against defendant City and County of Denver, as damages for personal injury received when he partially fell into a manhole in the parkway on Colorado Boulevard near the intersection thereof with Montview Boulevard, after alighting from a tramway bus on May 20, 1949 at about eleven o'clock in the forenoon. Motion for new trial was overruled and defendant City and County of Denver, having by its answer denied notice to the city, either actual or constructive, and also any liability whatever on the part of the city, now seeks reversal of the judgment on a number of specified points, the substance of which generally is to the effect that the evidence did not establish negligence on the part of defendant city; did not disclose any negligible defect in the manhole cover; and, finally, no actual or constructive notice to defendant city.

Plaintiff, a man seventy-nine years old, testified that he lived at 2045 Bellaire street, about three and one-half blocks from the corner where the accident occurred, and that he rode the tramway bus two or three times a week and had got off at the corner in question many times; that on this occasion he alighted from the front door of the bus, stepped off on the curb and in making the next step, he stepped on the manhole cover and it went down and one leg went in as far as the knee, breaking two bones in his ankle. He further testified that the manhole was about thirteen inches from the curb; that it is about twenty-five feet from the curb of Montview to the sidewalk on Montview and about nine feet from the curb to the sidewalk on Colorado Boulevard. He further testified that he supposed he had stepped on the manhole many times before, and had seen the manhole area every time he would get off at this corner; that he thought the material around the manhole was rock or concrete and that it was smooth, and *if it had been obviously* deteriorated, loose or dangerous, he would not have stepped on it, and, finally, that the manhole was about twelve feet back to the crosswalk.

The operator of the tramway bus testified that he saw plaintiff step on the manhole after alighting from the bus and that he went to his assistance and the lid was tilted up on edge; and after plaintiff was assisted out of the manhole, he replaced the cover so it would fit. He further testified that the lid or cover was not as heavy as the usual manhole cover and it was rusty and warped so that he had to turn it around to get it to fit. He further testified that the manhole was about ten or twelve feet from the front door of his bus from which plaintiff alighted; that he ordinarily parked his bus so that customers could alight and get off on the sidewalk or near there; he stated that *"it wasn't necessary for one of my passengers to walk across that manhole."* He testified that plaintiff turned to his left after alighting from the bus and took two or three steps and down he went; that he had seen this manhole

before and had never observed that there was anything wrong with, or dangerous about it.

An employee of the parks department of the defendant City and County of Denver testified that at this particular corner there are two manholes, one as a part of the parks department, and the other the sanitation division of the city; that there are sidewalks at that location both ways, north and south and east and west; that the sidewalk running east and west is approximately eight or ten feet from the manhole in question and that the purpose of this particular manhole is as a drainage from Montview Boulevard and the valve that is used to shut off drainage in the spring and fall of the year; that the manhole is of usual construction and about four and one-half feet deep; that the cover fits flush with the ring around the manhole; that usually it is necessary to use a tool to take off the cover; that he had taken the cover off the manhole the latter week of April of 1949; and that in all respects, there was nothing out of the way or defective about the manhole or its cover.

That a municipality is required to exercise a high degree of care in the maintenance of its streets and sidewalks designed for vehicular and pedestrian use is so well established in this and all other jurisdictions, the citation of authorities would be superfluous. It is equally as well established that before liability for any defect in, or lack of maintenance, of a street or sidewalk will attach, the municipality must have notice either actual or constructive. The manhole here in question is in a parkway between the curb line and a sidewalk prepared for pedestrian use. It is true that such parkway is technically a part of the street, but not such part of the street as is designed and prepared for vehicular use and is certainly not to be considered a part of a sidewalk prepared and to be maintained in a safe condition for pedestrian use; therefore, the degree of care relative to the so-called park area is of a lower standard than that required in the construction and maintenance of the streets and sidewalks proper. The

duty resting on the city looks toward the safety of those who are expected to use the streets and sidewalks, and that degree of safety does not extend to a parkway which is not expected to be used by pedestrians. The pedestrian has no right to expect the ordinary area between sidewalks and the curb stone to be in as safe condition as the sidewalk, and to place any such burden on the city is unreasonable.

 The right of recovery, and the liabilities of the municipality, depend upon the place where an accident occurs. In the instant case, plaintiff was familiar with the location and condition of the manhole in question, having seen it and passed over it many times almost up to the day of the accident. He observed no defect in its construction or maintenance. The tramway bus operator testified that he had not seen anything out of the way regarding the maintenance or condition of the manhole where he had stopped his bus frequently for passengers to alight and further stated that, "It wasn't necessary for one of my passengers to walk across that manhole." There is but one answer to the total effect of all the testimony in the case and that is, that when plaintiff voluntarily and without any fault on the part of the municipality, attempted to use that portion of the street not prepared for such use, and in face of the fact that a sidewalk in good condition was there for his use, he did so at his peril and without liability on the part of the city, it not being shown that the manhole or the area surrounding it was in a dangerous condition and that such condition was known to or could have been known by the municipality in the exercise of due care. In *City of Denver v. Dean,* 10 Colo. 375, 16 Pac. 30, this court said, "It may be that the phrase 'means of knowledge' fairly includes cases of neglect to anticipate and prevent certain defects,—cases covered by the foregoing discussion; but, with that exception, we think the phrase applicable only to visible defects or obstructions,— defects or obstructions that are open and notorious; *so notorious as to be observable by all.*" Plaintiff had no

right to assume that this area was in the condition that he would expect to find the sidewalk nearby, which was prepared for his use. Such has been the effect of the decisions of our appellate courts since the early case of *Oliver v. City of Denver*, 13 Colo. App. 345, 57 Pac. 729, in which it was stated, "It is true that a town or city is charged with the duty of seeing that all parts of its streets open for travel, including the sidewalks as well as carriage way, are kept in repair, but the general rule is that it performs that duty when the way designated, and evidently intended for travel, is without obstruction or such structural defects as to endanger the safety of travelers in the exercise themselves of ordinary care. * * * In either event he had no right to assume that the way from the sidewalk to the street was smooth and even, but was himself required to exercise a caution and prudence adapted to the nature of the case." An interesting case, identical in principle with the instant one, was decided by the Supreme Court of the state of Kansas in February of 1950, the opinion being reported as *Mast v. City of Galena*, 168 Kans. 628, 215 P. (2d) 152.

It is not contended or even suggested that the city had actual notice of any defect relative to the instant case. The testimony does not permit of any finding that the manhole in question was in a defective or dangerous condition for any period of time whatever prior to the accident; much less does it permit of any finding that it was in a dangerous condition at the time of the accident. So far as can be determined from the evidence, any condition that might have caused the manhole cover to be slightly misplaced was so negligible that it was not observed by plaintiff or those familiar with the manhole by seeing it from day to day. Under these conditions, there is a total lack of any showing that the condition was such, and had been for any sufficient length of time, that the city should have known about it, therefore, it had no notice either actual or constructive, which situation bars liability in this case. Usually the question of whether or not the munici-

pality had constructive notice is one for submission to a jury; however, in this case, where the defect, if there was a defect, was not observable to plaintiff, who was familiar with it and saw it many times from day to day, and any such defect, not observable to others, and could only be found by a rather close examination, all of which was clear from the evidence, it was a matter of law for the trial court, and it should have directed a verdict for defendant. *Siger v. Pittsburgh,* 156 Pa. Sup. 51, 39 A. (2d) 296.

In view of the foregoing, we deem it unnecessary to discuss other errors, especially those specified as to the giving and refusing of certain instructions.

For the reasons herein stated, the judgment is reversed and the cause remanded with directions to dismiss the action.