No. 17,526.

PUEBLO, A MUNICIPAL CORPORATION, ET AL *v.*
GUY E. RATLIFF.
(281 P. [2d] 1021)

Decided April 4, 1955. Rehearing denied April 25, 1955.

382

Messrs. BURRIS & BUMGARDNER, for plaintiffs in error MacIndoe Plumbing and Heating, Inc., John M. Mac-Indoe, Doe I and Doe II as copartners doing business as John MacIndoe Plumbing and Heating.

Mr. JOHN H. MARSALIS, for plaintiff in error City of Pueblo.

Mr. JOHN R. WALL, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

PLAINTIFF in error MacIndoe Plumbing and Heating, Inc., of Pueblo, Colorado, in the latter part of December, 1952, made an excavation on one of the streets of the City of Pueblo for the purpose of making what was claimed to be an emergency connection. It appears that at the time, said concern had a deposit of $25.00 with

the city to guarantee cost of repairs. There is an unreconcilable dispute as to whether this concern or any of its employees obtained a permit for the excavation; however, it is undisputed that after the completion of the work, which was only a temporary job, employees of the company filled the excavation; did so two or three times, and made no report to the city prior to January 12, 1953. Ratliff, defendant in error, who was plaintiff in the trial court, about 9 o'clock a.m. on January 12, 1953, drove the right wheels of his automobile over the alleged unguarded excavation, causing damage to the automobile and injuries to his neck, for which he filed his complaint against Pueblo, a municipal corporation, MacIndoe Plumbing and Heating, Inc., John M. MacIndoe, Doe I and Doe II, as copartners doing business as John MacIndoe Plumbing and Heating, and by an amended complaint sought damages in the sum of $80,000.00. Answers were filed by defendants. Defendant Plumbing Company admitted cutting the trench in the pavement; but alleged that it was acting under authority of a permit issued by the city, and made general allegations to the effect that at the time of the alleged actions they were under no duty to plaintiff or others to maintain the street in a reasonably safe condition, or at all.

By its answer, defendant city denied the matter of giving authority to the plumbers to make the excavation; a general denial of allegations to the effect that the city had notice and failed in its duty to repair the street; and finally, that the negligence of plaintiff was a contributing factor to the accident.

The case was tried to a jury which returned its verdict on January 26, 1954, in favor of plaintiff and against all defendants in the sum of $35,000.00, on which judgment was duly entered. To secure a reversal of this judgment defendants have procured the issuance of a writ of error from this Court after motion for new trial was denied, as well as a motion for judgment notwithstanding the verdict.

Since reversible errors occurred in the trial, necessitating reversal of the judgment and a new trial ordered, it will not be necessary to detail at length much of the testimony; however, certain parts thereof will be discussed to support our conclusion that the verdict, at least the size thereof, is not supported by competent evidence. The controlling questions are, in substance:

Did the city have notice of the condition in its street, either actual or constructive?

Was the plumbing concern relieved of liability by its claim that the duty to repair the excavation was on the city?

Was plaintiff guilty of contributory negligence?

Did the trial court err in sustaining objections to proper questions propounded to plaintiff by counsel for defendant city?

Is there competent evidence to support a large verdict based upon damage to plaintiff?

■ It is undisputed, that the city did not have actual notice of the condition; that it clearly appears from the record that the excavation had been filled by the plumbing concern three times after the work was completed; that it does not appear that an unreasonable time elapsed from the date of the last filling to the time of the accident; that weather conditions could cause an overnight sinking of the fill; and moreover, if the condition was such that the city would be charged with constructive notice, then it was such a condition that plaintiff, in broad daylight, should have observed. If it was in such a condition that plaintiff did not observe it, then, by what line of reasoning could plaintiff successfully claim that it was such a condition that the city was charged with notice thereof. On the other hand, if it was a bad condition and observable to all users of the street, and plaintiff carelessly and negligently drove his automobile, in broad daylight, into the excavation, then such negligence, or carelessness, or indifference, contributed to,

and was, the proximate cause of the injury of which complaint is made.

As to the matter of whether or not the evidence supports the claimed excessive verdict, we find that two orthopedic surgeons, Doctors Norman and Ley, testified with some degree of uncertainty as to the cause of plaintiff's present condition. Dr. Norman diagnosed the trouble as "some arthritic changes and slight narrowing of the fifth cervical interspace disc." He further testified that plaintiff showed such a marked recovery after January 14, 1953, that he was able to leave off the brace that he had been wearing, but that there had been a reaggravation of the cervical disc from activity. This activity was related by plaintiff as doing some manual labor that required leaning his head backwards and looking upwards, which seemed to aggravate the condition and caused him much pain and suffering. Dr. Norman testified that the new injury was due to the overhead work, and testified that he thought plaintiff has permanent disability. Dr. Ley gave his opinion to the effect that the disability from which plaintiff was sufferng was of a permanent nature.

Dr. Boyer, another orthopedic physician testifying for defendants MacIndoe, stated that X-rays of plaintiff examined by him showed no evidence of fracture, dislocation or other injury; he diagnosed the injury as a sprain; was of the opinion that there was no permanent disability; that there was some limitation of motion that might have impaired his ability as a watchmaker; but, in his opinion, that condition would not be permanent. There is a total absence of any medical testimony presented by plaintiff to show to what degree his earning capacity had been impaired. Plaintiff appeared at the trial wearing the brace and Dr. Norman, his own physician, testified to the effect that there was no necessity of its being worn in the courtroom, except that plaintiff says he is more comfortable with it on.

We find that counsel for plaintiff, defendant in

error here, consistently refers to the matter of plaintiff's injury as plaintiff being totally and permanently disabled. Neither doctor testified that plaintiff was permanently incapacitated from carrying on his business as a watchmaker. It is the contention of counsel for plaintiff here that it would not be possible for any physician to say exactly what percentage of disability exists in any person; that any testimony by a physician as to any percentage of disability would be a mere conclusion. Our experience leads us to say that had plaintiff's doctors, for example, testified that plaintiff was suffering a 90% permanent disability, plaintiff's counsel would have leaned very heavily on such testimony in support of their client's claim. "There should be some evidence in the record of the probable effect upon future earning capacity which the injuries occasioned. A physician might be able to give valuable information upon this issue." *Pawnee Company v. Powell*, 76 Colo. 1, 227 Pac. 836. In that case the court further stated, "There being no evidence at all here to establish these elements of damage with reasonable certainty, there was no proper basis for their allowance." It follows that the jury in the instant case was not qualified to say as to what extent plaintiff's earning capacity was impaired, without medical testimony on this point.

On cross examination the following question was propounded to plaintiff, "When you were in the Sea Bees did you ever have an injury for which you received care by the Veterans Administration? The trial court erroneously sustained an objection to this question. This was a proper question, and any evidence elicited thereby was admissible for the reason that an inquiry into the capacity of plaintiff prior to the injury, including his physical condition, and evidence as to a previous disability, if any, is permitted. This was information that could not be obtained from the Veterans Administration, because such is held to be confidential. Had it developed that plaintiff had suffered an injury resulting in partial disability

prior to the accident, it would have had a material bearing upon the question of the amount of damages which plaintiff suffered as a result of this accident. As hereinbefore mentioned, there was no evidence introduced to show that the excavation was ever in a bad or dangerous condition prior to the time of the accident, and it therefore follows that there is nothing from the condition that would imply constructive notice to the city. There was evidence of snow or moisture just previous to the time of the accident. Counsel for plaintiffs in error MacIndoe contend that their liability ceased after five days, according to the provision of the city ordinance covering such matters. They cannot successfully claim the benefit of this ordinance unless they establish compliance therewith. As hereinbefore stated, it is in violent dispute as to whether the plumbing concern phoned for an emergency permit. It is clear that they did not, "as soon thereafter as possible," as the ordinance provides, file a written application. An employee of the plumbing concern testified that he had not given the city any other report of the excavation. The book of applications for permits to make excavations or paving cuts is an exhibit in the case, and it discloses "Application for permit to make paving cut" was entered on January 12, the date of the accident, on which date the city employee received a call regarding the condition of the cut, and on inspection, determined that it was the cut or excavation of the plumbing concern here involved, and the excavation was immediately repaired. In the last analysis, the question of the permit is not of great consequence, because, either with or without the permit, liability would attach to either the city or the plumbing concern according to the facts. In the instant case, the evidence as developed would seem to support nonliability on the part of the city, even though it had been clearly established that the city had given its authority.

The verdict is in favor of plaintiff against all defendants, namely, Pueblo, a municipal corporation:

388

MacIndoe Plumbing and Heating, Inc., a corporation; John M. MacIndoe, Doe I and Doe II, as copartners doing business as John MacIndoe Plumbing and Heating. Objections to the verdict, and to its entry, were duly made, and again made in the motion for new trial. There is a glaring variance between the allegations of the amended complaint and the proof, and there is no evidence as to the existence of a partnership. The record is abundantly clear that any participation in this unfortunate event was by the officers, agents or servants of the corporation; therefore, when there was a joinder of partnership and corporation, and there was a total failure as to proof of the partnership, it follows that the judgment entered on such a verdict cannot properly be sustained.

■ As herein indicated the jury was left to conjecture as to the extent of the permanent injury, if any, to plaintiff. It was afforded no basis for determination and when the appearance of plaintiff in the courtroom and the amount of the verdict are considered, it would appear that the amount of the verdict is a result more of sympathy than passion or prejudice, and is excessive. Accordingly the judgment thereon is reversed and the cause remanded with directions for a retrial of the issues presented.