No. 18,122.

Pueblo, a Municipal Corporation, et al. *v.*
Guy E. Ratliff.
(327 P. [2d] 270)

Decided June 16, 1958.    Rehearing denied July 21, 1958.

Mr. GORDON D. HINDS, for defendant in error City of Pueblo.

Messrs. BURRIS & BUMGARDNER, for plaintiff in error MacIndoe Plumbing and Heating, Inc.

Mr. JOHN R. WALL, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

PLAINTIFFS in error were defendants below and defendant in error was plaintiff. We will refer to defendant in error as "plaintiff" or "Ratliff," to the City of Pueblo as "Pueblo" or "City" and to MacIndoe Plumbing and Heating, Inc., a corporation, as "MacIndoe." John

M. MacIndoe, dba John M. MacIndoe Plumbing and Heating, was dismissed as a party by the trial court and no error is assigned thereto.

Plaintiff sought to recover damages for alleged injuries to his neck which injuries he claimed resulted from the negligence of defendants on January 12, 1953 (a Monday) at about 9:00 A.M. when he drove his automobile into an unmarked excavation on a public highway in the City of Pueblo, Colorado.

In *Pueblo v. Ratliff*, 131 Colo. 381, 281 P. (2d) 1021, a judgment of $35,000.00 in plaintiff's favor, awarded after a jury trial, was reversed because of error in the record. A second trial resulted in a hung jury. This writ of error is directed to the third trial where the jury awarded plaintiff $37,500.00. Motions for new trial were overruled and Pueblo urges several grounds for reversal, only one of which we need here consider; namely, that the City had no actual or constructive notice of the excavation, therefore it has no liability.

Defendant MacIndoe urges for reversal:

1. That the verdict is excessive.

2. That there is insufficient evidence to support the verdict and thus it is contrary to the law; and

3. That there were "Errors in law" — meaning thereby the admission of certain testimony of a garage mechanic and of plaintiff, the asking of a question to which objection was later sustained, and errors in giving and refusing instructions to the jury.

It appears that plaintiff was a watchmaker by trade, over 44 years of age, and operated his own business which he had built up to where he was making $200.00 per month at the time of the accident. On the morning in question he had parked his automobile facing west in the one hundred block of West Second Street. This was just off Santa Fe Avenue. He proceeded to walk the entire length of the sidewalk area on both sides of the one hundred block and crossed the street at both ends of the block. After returning to his car he pulled out of

the parking place and drove west on Second Street a distance of approximately a hundred feet, at a speed of about 20 miles per hour. The weather was clear but there had been some snow a day or two earlier. Plaintiff testified that a car was trying to park across the street and that an oncoming automobile pulled to his side of the street going east; that as he watched this car and pulled to his right he drove into the excavation in question. Conflicting testimony disclosed that the excavation was visible anywhere from "even with the hole" to over forty feet away. Plaintiff did not apply his brakes before the accident, claiming he did not see the hole before he struck it. The excavation was a cut in the pavement approximately two feet square at its top and seven to twelve inches deep.

The record discloses conflicting testimony as to whether MacIndoe had secured the required permit from the City prior to making the excavation in question on December 22, 1952. All of the many witnesses for the City, who testified on this point, denied there had been any request, oral or written, until the day of the accident. This is verified by its records. The only evidence to the contrary was MacIndoe's witness who testified that a telephone call had been made December 22, 1952, in an emergency situation to secure such permission, but it was admitted there was no timely securing of the written consent as required by ordinance. The record also discloses that when MacIndoe did apply for and obtain a permit on January 12th, the permit issued was back dated to January 2nd. Such improper action of course could not bind the City.

From the date of the excavation until the accident MacIndoe, whose office was close by and whose employees had the opportunity to observe the excavation, had filled and back-filled the hole several times because it had settled. The dates of these fillings do not appear in the record. Many City employees, whose duty it was to report defects in the streets, passed the spot on this

busy street several times a day from the time of the original excavation until the accident, yet all testified they saw no hole which would constitute a defect.

■ Even if the hole had been last re-filled a day or two before the accident, the fact that it had stormed during the same period, resulting in moisture in the excavation, might have resulted in a settling of the dirt over the weekend, or passing automobiles kicking out the dirt may have resulted in the condition as testified to by the plaintiff. To establish constructive notice the burden was on plaintiff to show that the defect which caused the accident existed as a hazard for such period of time prior to the accident as to charge the City with knowledge of its dangerous condition. This he failed to do. He did not prove that a dangerous condition existed at any time when City employees passed that way, or that the particular defect resulting in the injury had existed for a period of time sufficient to charge the City with constructive notice. Evidence that the excavation was re-filled a number of times tends to establish that the hazard was corrected and its recurrence would only be material from the date of its last re-filling. The plaintiff failed to establish that date.

■ Though questions of negligence and contributory negligence are generally within the province of the jury, where the liability of the City depends upon proof of notice, either actual or constructive, and evidence thereof is lacking or insufficient, the question becomes one of law. The facts here persuade us that proof that the City had actual or constructive notice of the defect involved is insufficient to justify a judgment against the City, and the trial court should have directed a verdict for defendant City. See *City and County of Denver v. Farmer,* 125 Colo. 462, 244 P. (2d) 1086. We point out that it is not every excavation that constitutes a defect sufficient to put a City on notice.

In view of plaintiff's failure to prove either actual or constructive notice the action must be dismissed as

against the City, and it is not necessary to consider other issues urged by Pueblo for reversal. Accordingly we proceed to consider the errors alleged by defendant MacIndoe.

■ At the first trial the record disclosed that the extent, if any, of plaintiff's permanent injuries was left to the conjecture of the jury, there being no proper basis upon which the jury could have awarded damages for impairment of earning capacity. At the third trial the evidence, sometimes disputed in pertinent part, disclosed his age and a life expectancy of 25.27 years; his present earnings, and an opportunity to go to work for another watchmaker for $75.00 per week; that he is 100% disabled to do watchmaking due to his injury, a cervical disk neck injury, and competent testimony that an operation might not alleviate his condition and in fact could, if unsuccessful, result in a partial paralysis. We cannot say that under these facts a verdict of $37,500.00 was not adequately supported by the evidence or was excessive. An award of $33,918.00 was affirmed by this court and not deemed excessive for a similar injury in *Thomas v. Dunne,* 131 Colo. 20, 279 P. (2d) 427. In *Riss and Co. v. Anderson,* 108 Colo. 78, 114 P. (2d) 278, the court affirmed a judgment of $25,303.50 for permanent injuries causing prolonged suffering and severe pain consisting of lacerations and thigh fractures, resulting in the shortening of one leg and which disqualified the victim from continuing the same kind and character of work in which he had been employed.

■ MacIndoe urges that a U. S. Government disability pension received by Ratliff for a 30% disability in the amount of $40.00 per month for a heart condition resulting from service in World War II should have been valued and deducted by the jury from its award. We do not agree. There is no relation between plaintiff's present injury and his wartime disability. Such benefits cannot, under the facts, serve defendant in mitigation of damages. Even damages paid by insurance companies

474

to an injured party, to which the wrongdoer did not contribute, could not diminish an award. *Carr v. Boyd,* 123 Colo. 350, 229 P. (2d) 659.

■ This court has held that when nothing appears in the record to indicate that a verdict was the result of prejudice, partiality or obvious mistake, the assessment of the damages is within the exclusive province of the jury under proper instructions. *Ison v. Stewart,* 105 Colo. 55, 94 P. (2d) 701; *Clark v. Hicks,* 127 Colo. 25, 252 P. (2d) 1067. Also that the question of whether the jury's verdict is excessive is peculiarly within the province of the trial judge to determine, and no mere difference of opinion, however diverse, justifies interference with the verdict by the appellate court on the ground that the damages awarded are excessive. *Edwards v. Quackenbush,* 112 Colo. 337, 149 P. (2d) 809; *Thomas v. Dunne,* supra. See also 3 Am. Jur. 453, §893. In the light of these principles, and from our consideration of the record before us, we are unwilling to say that the trial court abused its discretion in permitting the verdict to stand.

The disputed facts relating to the accident itself and to the award were exclusively within the province of the jury to determine. As against defendant MacIndoe they are sufficient to support the verdict and will not be disturbed.

Part of MacIndoe's third assignment of error relates to the admission of the testimony of one Cleland who was permitted to testify as to his conclusions as to the cause of the damage to *plaintiff's automobile.* Cleland was the mechanic who repaired plaintiff's car after the accident. After being properly qualified and describing the damages and their repair he was asked this question: "Presuming this automobile did drop in the hole, how deep would that hole have to be to have caused this particular damage?" Defendant's objection was overruled and the witness was permitted to answer.

■ We perceive no error in the admission of this

testimony. In the first place the evidence as to how the injury *to Ratliff* occurred was not controverted. Here Cleland's testimony was to the effect that the damage to the car was caused by a certain depth of a hole. This related only indirectly to plaintiff's injury. Where the opinion expressed has no bearing on the ultimate facts as to whether a hole existed, whether Ratliff negligently drove into it, and whether he was injured, then the answer to the question cannot be prejudicial and so is not error. See *Thomas v. Dunne,* supra, and *Ison v. Stewart,* supra.

█ In civil actions a witness who possesses special skill or knowledge of the subject matter may state his opinion where the facts are such that inexperienced persons are likely to prove incapable of forming a correct judgment without the assistance of such an opinion. The question whether admission of an opinion of an expert is proper and whether he is qualified, as well as the determination of the competency or incompetency of non-expert opinion evidence, rest largely in the discretion of the trial judge. 5 Am. Jur. 859, §648. But an expert witness cannot give his opinion that an injury was inflicted in a certain manner, if the manner in which it was inflicted, or its extent, is controverted.

Even if this were not so there is another reason why witness Cleland could answer. In general there are two distinct classes of cases in which expert testimony is admissible as is said in 20 Am. Jur. 648, §776:

" * * * In one class are those cases in which the conclusions to be drawn by the jury depend on the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subjects in question. In the other class are those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend on professional or scientific knowledge not within the range of ordinary training or intelligence.

The distinction between these two classes of cases is self-evident. In the former class of cases, the facts are to be stated by the experts and the conclusion is to be drawn by the jury. In the other group of cases, the expert states the facts and gives his conclusion in the form of an opinion which may be accepted or rejected by the jury. If the knowledge of experts consists of descriptive facts which can intelligently be communicated to others not familiar with the subject, the case belongs to the first class. If the subject is one as to which expert skill or knowledge can be communicated to others not versed in the particular science or art only in the form of reasons, arguments, or opinions, then the case belongs to the second class."

Here Cleland's testimony had described the damage to the right front wheel, engine, radiator and running board. His experience was such as to enable him to state with reasonable accuracy the depth of a hole it would require to drop the car sufficiently to strike the running board. These facts bring his testimony within the rule that the opinion was properly expressed and the jury could accept or reject it as it deemed proper.

We have considered the other points urged for reversal, including objections to the giving and rejection of certain instructions, and consider them to be without merit.

The judgment is affirmed as to defendant MacIndoe Plumbing and Heating, Inc., a corporation, and reversed as to Pueblo, a Municipal Corporation, with instructions to dismiss the action as to the latter.

MR. JUSTICE MOORE, MR. JUSTICE HALL and MR. JUSTICE FRANTZ dissenting.

MR. JUSTICE FRANTZ dissenting:

We depart from well-recognized, long-memorialized rules of law if we accept the majority opinion. I would willingly overrule these principles if they were palpably

wrong and were instruments of injustice; but, since I cleave to the notion that they are good, sound law, I deferentially dissent from the opinion of the majority. In doing so, I suggest that this should be the opinion of the court.

I shall not wittingly assist in bringing about the demise of the "reasonably prudent man" who has been both praised and damned by judges, lawyers, professors and juris-consults. And yet I fear such is the effect of the majority opinion. Nor shall I knowingly discard the efficacious rule that where the evidence is conflicting, or where the facts and circumstances from which the jury may reasonably draw an inference of negligence are shown, or when the determination of the question of negligence depends upon the inference to be drawn from a variety of facts and circumstances in the consideration of which there is room for substantial difference of opinion, the question of negligence should be submitted to the jury under proper instructions.

No one can read the record of this case without concluding that the evidence is discordant in important detail. There are present facts and circumstances from which the jury could reasonably infer negligence on the part of the defendants. The variety of the facts and circumstances in evidence are such that there could be a substantial difference of opinion on the questions of negligence and contributory negligence. Then, too, it was solely within the province of the jury to give such credit to the testimony of witnesses as it thought should be due.

There is substantial competent evidence in the record to sustain the verdict of the jury. Considering the pleadings and the evidence, the trial court, as I view it, gave complete and proper instructions to the jury. Consequently, I hold that the verdict of the jury should be, and is, binding upon this court.

It is undisputed that the street in question was 44 feet from curb to curb. There is evidence that at the

time in question both sides of the street were to a great extent lined with parked cars. As Ratliff pulled away from his parked position and proceeded down the street at about twenty miles per hour and while in second gear, he observed a car preparing to park on the other side of the street, and another car attempting to pass the car which was in the process of being parked.

This passing car was to some extent in Ratliff's lane of travel and coming toward him. Ratliff took his foot off the gas pedal and moments after the passing car returned to its lane of travel Ratliff's right front wheel followed by his right rear wheel dropped into the hole in question. As each wheel dropped into the hole, Ratliff was thrown against the top of his car, following which pain developed in his neck.

The evidence indicates that the average width of an automobile is 6 feet 3 inches. Parked cars, a parking car, a car passing the latter, and plaintiff's car going in an opposite direction to the latter represented at least 31.5 feet of cars covering the width of the street. These computations would indicate an allowance of little more than a foot on each side of these cars in order to cover the whole width of the street.

Ratliff testified that he devoted his attention to the traffic situation, and that he did not notice the hole in the pavement. His testimony is to the effect that his first knowledge of the hole came when his front wheel fell into it.

The evidence is in dispute as to the size of the hole — testimony varying from 2 feet square to 3 feet square. There is a conflict in the testimony as to the depth of the hole — it varying from 6 to 10 inches.

A number of witnesses testified that the pavement around the hole was dry; others testified that moisture was present. Some witnesses testified that the pavement was clean around the hole while others testified that the circumjacent area was covered with dirt.

Witnesses differed as to the distance from which Rat-

liff first could have observed the hole. One testified that it could not be seen until one was "even with the hole"; another testified that it could be seen within a distance of "twenty feet." Distances from other vantage points were given.

The record discloses a conflict in the evidence between the mechanics called as witnesses concerning the cooling system in the plaintiff's car. According to plaintiff's witness the mechanism was such that the breaking of the hose would not necessarily result in the leaking of the coolant; according to the defendants' witnesses the cooling system was so made that the breaking of the hose would result in the coolant immediately spilling out on the pavement.

There is disagreement between the medical experts as to the physical condition of the plaintiff. It was the opinion of Ratliff's doctors that he was suffering from a herniated disk resulting from his head coming into contact with the top of his car as the front and rear right wheels dropped into the hole. Defendants' doctors say that Ratliff is suffering from a scalenus syndrome, an anatomical condition. One of these doctors admitted that "an injury to the neck could precipitate that condition."

On the matter of actual notice to the City of the existence of the hole, the testimony is not in accord. In behalf of MacIndoe the evidence showed that this plumbing concern sought and obtained verbal permission from the City to cut the pavement and make the hole so that it could take care of an emergency created by a leak in a water pipe under the street. This permission was granted and acted upon twenty-one days before the accident. Testimony to this effect was denied by the City.

For purposes of establishing implied or constructive notice to the City of the existence of the hole, the evidence shows that a hole was dug twenty-one days before Ratliff struck it; that a dog had previously been pitched out of a truck when passing over the hole; that observers had noted its presence; that it had been refilled by em-

ployees of MacIndoe two or three times during the twenty-one day period. The City introduced evidence by which it was shown that police officers, street maintenance men, and meter collectors, all of whom traversed the street during the period, had not noticed the hole. There is some evidence that the hole had been refilled with dirt a matter of days before Ratliff's experience; that it had snowed and cars passing over the hole gradually lifted dirt from it, thereby deepening it.

The absence of spilled coolant or of its odor at the hole after the event is greatly relied upon by the defendants as indicating that Ratliff's car had not passed over the hole or been damaged thereby.

Lack of actual or constructive notice is strenuously urged by the City. A careful reading of this record persuades me that the trial court correctly submitted the question to the jury. It can be as justifiably said of this case as was stated in *Denver v. Magivney*, 44 Colo. 157, 96 Pac. 1002:

" * * * The jurors were thus * * * carefully told that, before plaintiff could recover, she must have proven notice to the city of the specific defect in the sidewalk for a period prior to the accident sufficient to have enabled the municipality to repair the same."

Both defendants contend that Ratliff was guilty of contributory negligence as a matter of law. They rely on his failure to observe the defect, and depend upon the language in *Pueblo v. Ratliff*, 131 Colo. 381, 281 P. (2d) 1021 (previous review of a former trial of this case), in which it was opined that if the defect in the street was not observable by Ratliff, the defendant city could not be chargeable with constructive notice of it; on the other hand, if it was a bad condition and observable, Ratliff was contributorily negligent as a matter of law for driving into it in broad daylight.

According to the former opinion, 131 Colo. 381, that which the City *may* have discovered in twenty-one days Ratliff *should* have observed on this occasion, and in

view of the traffic situation confronting him, that is in my opinion fallacious reasoning; I say of it, non sequitur. Whether the City had constructive notice of the existence of the hole, under the circumstances, was left to the jury's determination; whether Ratliff should have observed the hole before reaching it, under the circumstances, was also left to the jury for resolution.

The trial court gave adequate and proper instructions on the question of contributory negligence, and in view of the testimony the trial court rightfully submitted the question to the jury. Fact and law make the defendants' argument on this matter bootless.

There is no evidence that Ratliff had previous knowledge of the defect in the street. Even if he had had such knowledge, his proceeding over it does not necessarily constitute negligence. A jury, properly instructed, might determine that a reasonably prudent man with knowledge of the defect was or was not negligent in driving as Ratliff did. "While knowledge of the existence of a defect or obstruction is a very important element in determining the question of contributory negligence, it is not alone decisive, unless the defect or obstruction is so great and obviously dangerous that a man of ordinary prudence would not attempt to pass over it." *City of Highlands v. Raine,* 23 Colo. 295, 47 Pac. 283.

The question of distraction of Ratliff by the traffic situation confronting him at the time was peculiarly for the jury to resolve, in determining contributory negligence vel non. "Notwithstanding knowledge of a danger, justifiable distraction or forgetfulness may excuse a party injured thereby." *Mathias v. Denver Union Terminal Ry. Co.,* 137 Colo. 224, 323 P. (2d) 624; see *Mountain States Tel. & Tel. Co. v. Sanger,* 87 Colo. 369, 287 Pac. 866. His conduct should be measured by the standard of what a "reasonably prudent man" would have done under the circumstances.

Attention to the traffic situation without observing the defect, of which there is no showing of previous

knowledge, brings into play another rule, again an application of what the "reasonably prudent man" would do under the circumstances.

From a leading case, *Denver v. Maurer*, 47 Colo. 209, 106 Pac. 875, 135 Am.S.R. 210, I quote the following:

"The defendant also insists that under the evidence, the plaintiff was, as a matter of law, guilty of contributory negligence, but for which the accident would not have happened. It happened in the business part of the city where many people were passing to and fro and *where many things necessarily divert one's eyes from the walk.* There was evidence that the hose was the same color as the walk. *The plaintiff turned her head to look for a street car.* She said the hose struck her. It was her duty *to exercise reasonable care and prudence* when walking on the sidewalk. She, however, was not bound, at her peril, to keep her eyes fixed on the walk constantly. *She had a right to believe that the walk was free from obstructions* and to act with reasonable prudence upon such belief. *Whether she did act with reasonable care and prudence, under the circumstances, was eminently a question for the jury.*" (Emphasis supplied.)

We are committed to the rule that the failure to observe a defect because of justifiably diverted attention may not be contributory negligence. The law exacted of Ratliff such care as a person of ordinary care, prudence, caution, and judgment would have exercised under the circumstances of this case. Whether Ratliff so acted was a matter for the jury to determine. *McClay v. Philadelphia,* 224 Pa. 174, 73 Atl. 188; *Merchants' Ice & Cold Storage Co. v. Bargholt,* 129 Ky. 60, 33 Ky. L. 488, 110 S.W. 364, 16 Ann. Cas. 965; *Knight v. City of La Grande,* 127 Ore. 76, 271 Pac. 41, 61 A.L.R. 256. These are cases involving defects and diversion of attention.

"Questions of negligence, as well as contributory negligence, are generally within the province of the jury, which should not be invaded by the courts *except in the*

*clearest cases.*" (Emphasis supplied.) *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390, 21 Pac. 148; *Rocky Mtn. Fuel Co. v. Tucker,* 72 Colo. 308, 211 Pac. 383. I submit that this is not that clearest case which should move us to intervene.

"When the questions of negligence or contributory negligence depend upon facts to be determined from conflicting evidence, or from inferences to be drawn from facts and circumstances of that character that different intelligent minds may honestly reach different conclusions, they should be left to the determination of the jury." *Richardson v. El Paso Cons. Gold Min. Co.,* 51 Colo. 440, 118 Pac. 982. See *Denver Tramway Co. v. Wright,* 47 Colo. 366, 107 Pac. 1074; *Nichols v. C. B. & Q. R.R. Co.,* 44 Colo. 501, 98 Pac. 808; *Denver v. Maurer,* supra.

And in leaving these questions to the jury for resolution, this fact-finding body answers the test: What would a person of ordinary prudence have regarded as reasonably proper under the circumstances? *Rocky Mtn. Fuel Co. v. Tucker,* supra; *Richardson v. El Paso Cons. Gold Min. Co.,* supra.

That the verdict is excessive forms the basis for asserted ground of reversal. In part the defendants say that the wearing of the brace by Ratliff during the trial aroused the sympathy and prejudice of the jury. The doctors who treated Ratliff testified that they recommended he wear the brace for comfort, and to relieve pressure. Ratliff stated that he needed the brace during the trial for his comfort and to avoid distress.

A study of the evidence precludes us from holding that the jury acted unadvisedly or from passion and prejudice. Ample evidence is present to sustain the award. The trial court, being in a much better position than this court to determine the question of an excessive verdict, deemed the award here proper; hence, we should be loath to disturb this element of the case. *Edwards v. Quackenbush,* 112 Colo. 337, 149 P. (2d) 809. An

award of $33,918.00 for a herniated cervical disk in the neck was not considered excessive by this court in *Thomas v. Dunne,* 131 Colo. 20, 279 P. (2d) 427.

The witness Cleland, a mechanic called by Ratliff, was permitted, over objection, to give his opinion as to the depth of the hole, his opinion being predicated on damage to the car. *Ison v. Stewart,* 105 Colo. 55, 94 P. (2d) 701, appears to sanction such testimony. His conclusions, however, were merely cumulative of other substantial testimony on this matter, and if held inadmissible, could not be held to be prejudicial. *Harmon v. Callahan,* 187 Ill. App. 312; and see *Godsmark v. Bennett,* 52 Colo. 198, 120 Pac. 151, Ann. Cas. 1913 C 1266; *Chittenden v. King Shoe Co.,* 38 Colo. 187, 88 Pac. 183.

A doctor for the defense stated that in his opinion Ratliff was suffering from scalenus syndrome. On cross-examination, in relating his findings from X-rays, he testified, over objection of the defendants, that even though the X-rays revealed no abnormalities, still it was "possible" that a herniated disk existed in Ratliff's neck. Error is asserted based upon the concept that such expert could testify only to probabilities and not possibilities.

Cross-examination is the most potent weapon known to the law for weakening or disproving the case of the adverse party, and for testing the recollection, fairness, veracity and power of observation of the witness, and to disclose the improbabilities of his testimony. The testimony elicited upon cross-examination, and here attacked, does not fall within the interdiction that an expert may only testify to the probabilities in connection with injuries sustained; it related solely to the possibility of an X-ray not revealing a condition although the condition may exist. It attacked a basis upon which he founded an opinion, and from that standpoint had a weakening effect upon such opinion. It was proper cross-examination.

It was sought to impeach Ratliff in connection with

an excavation in the sidewalk opposite the hole in the street. Objection to this attempted impeachment was sustained. Defendants contend that in this the trial court committed error. Clearly this was impeachment on a collateral matter, and hence the trial court properly ruled on the objection. *Davis v. Bonebrake,* 135 Colo. 506, 313 P. (2d) 982.

Finding no error, I urge that we affirm the judgment.

MR. JUSTICE MOORE and MR. JUSTICE HALL concur in this dissent.