[No. 28713. Department One. October 23, 1942.]

L. T. THORSTENSON *et al., Respondents,* v. S. P. DEGLER *et al., Appellants.*[1]

[1]Reported in 129 P. (2d) 996.

*Thos. L. O'Leary* and *Ernest L. Meyer,* for appellants.

*W. Grant Armstrong* and *C. D. Cunningham,* for respondents.

JEFFERS, J.—This action was instituted by L. T. Thorstenson and Linda B. Gaisell, in the superior court for Thurston county, against S. P. Degler and wife, and their son, William Degler, to recover damages for personal injuries sustained by plaintiffs and injury to plaintiff Thorstenson's car, as the result of a collision, occurring on the Hunter's Point road just west of where it intersects the Edgewater Beach road, in Thurston county, between a car owned by Mr. Thorstenson, but being operated at the time by Mrs. Gaisell, and a car owned by S. P. Degler and wife, and being operated at the time of the accident by their son, William.

Plaintiff's action is based upon the claimed negligence of defendants. The complaint sets out two causes of action, in the first of which Mr. Thorstenson asked damages for personal injuries sustained by himself and damage to his car. As a basis for his claim, Mr. Thorstenson alleged the defendants were negligent in the following particulars: (1) in driving their automobile at a high, dangerous, and excessive rate of speed, to wit, in excess of fifty miles per hour; (2) in failing to keep a proper lookout, or any lookout at all, for other users of the highway; (3) in failing to give

any warning or signal of the approach of their automobile; and (4) in failing to have their automobile under proper control so as to avoid injury to plaintiffs.

In the second cause of action, Mrs. Gaisell asked damages for personal injuries received by her, and based her claim upon the same allegations of negligence contained in the first cause of action.

Defendants answered the complaint, denying any and all the allegations of negligence, and, as a first affirmative defense, alleged that plaintiffs were guilty of contributory negligence. As a second affirmative defense and cross-complaint, defendants alleged that plaintiffs were negligent, and, as a result of such negligence, the automobile of S. P. Degler and wife was damaged in the sum of $529.40. Defendants asked that plaintiffs' action be dismissed, and that they have judgment against plaintiffs for the amount last above stated.

Plaintiffs, by their reply, denied the affirmative matter contained in defendants' answer. The case was tried to the court without a jury on January 8, 1942. The trial court, after hearing the evidence and after viewing the scene of the accident, made and entered findings of fact, conclusions of law, and judgment in favor of plaintiffs. Defendants have appealed from the judgment, which was entered February 16, 1942.

Error is based upon the finding made by the trial court to the effect that respondents entered the intersection well to the right of the center of the Edgewater Beach road, and that at the time of the collision the respondents were on their own right-hand side of the road. Appellants also claim the court erred in making finding of fact No. 6, to the effect that appellants were negligent in driving at an unlawful and excessive rate of speed, failing to have their car under control, and driving their car on the wrong side of the road, and

that such negligence was the proximate cause of respondents' injuries; in making finding of fact No. 10, to the effect that the issues raised by appellants' cross-complaint are without evidence to support them; in entering conclusions of law Nos. 1 and 2, to the effect that respondents' injuries were the result of appellants' negligence, and that appellants' cross-complaint should be dismissed; and in entering judgment for respondents.

It may be stated that no contention is raised herein in regard to the amount of damages awarded to respondents. Neither is it contended that appellants' car, at the time of the accident, was not being driven by William Degler, the eighteen year old son of S. P. Degler and wife, or that the car was not a family car used for the pleasure and benefit of the Degler family, including William Degler; nor is it contended that William Degler, on July 7, 1941, the date of the accident, was not driving the car with the consent, acquiescence, and approval of his father and mother.

The accident occurred on the Hunter's Point road, forty-eight feet eight inches west of the west line fence of Edgewater Beach road extended. The latter is a general county road running north and south, and the Hunter's Point road is a general county road running east and west. Hunter's Point road does not extend east of its intersection with the Edgewater Beach road, but does extend beyond in a northerly direction. The Edgewater Beach road does not extend north or west beyond its intersection with the Hunter's Point road.

The traveled portion of these roads is well defined. Between the traveled portions of the Edgewater Beach road, as it turns west into the Hunter's Point road, and the Hunter's Point road as it turns to the north, is a triangle, or V, which is used only by cars going north or south, and is covered with loose gravel. No

official plat of these roads was introduced, and it does not appear just where what might be termed the legal intersection occurs.

The view of one traveling east on the Hunter's Point road is obstructed by weeds and brush to the south, until he gets practically up to where the Edgewater Beach road turns off, and the view of one traveling north on the Edgewater Beach road is likewise obstructed until he gets up to where he can see down the Hunter's Point road. The Edgewater Beach road approaches the intersection on a level grade, while the Hunter's Point road approaches the intersection on a five per cent down grade. All of the parties involved herein were familiar with both of these roads and with their intersection.

The trial court found, and this finding is sustained by the positive testimony of respondents, that on July 7, 1941, respondents were driving north on the Edgewater Beach road, in a car owned by respondent Thorstenson, but being operated at the time by Mrs. Gaisell; that respondents intended to turn to the left at the intersection of the two roads, and continue westerly on the Hunter's Point road, toward Olympia; that respondents entered the intersection and passed through it at a speed of fifteen miles per hour, and were well to the right of the center of the Edgewater Beach road, their right wheels being over in the loose gravel hereinbefore referred to.

The trial court also found, and it is this finding which appellants contend is not supported by the evidence:

"That after plaintiffs [respondents] had passed the intersection and had reached a point on the Hunter's Point road 48 feet 8 inches west of the west line of the Edgewater Beach road, the highway at this point being 22 feet 5 inches wide, and while they were traveling on their own right hand side of the road with ample space for defendants [appellants] to have driven their

car to their own right hand side of the road, said defendants, driving their car at 30 to 35 miles an hour at the time of the impact, at which speed, under all the circumstances then existing their car could not have been stopped in a distance less than 79 to 103 feet, drove their said car with great force and violence into and against the automobile in which plaintiffs were riding, and as a result thereof plaintiffs suffered injuries and damages hereinafter more particularly set forth."

The trial court then found that appellants were negligent in operating their car at an excessive and unlawful rate of speed, under all the circumstances then existing, and, in view of the fact that the intersection was obstructed, in failing to have their car under proper control and in driving their car on the wrong side of the road. The court found that such negligence on the part of appellants was the proximate cause of the injuries to respondents.

It is not contended by appellants that the collision did not take place forty-eight feet eight inches west of the west line fence of the Edgewater Beach road, but appellants do contend that the court erred in finding that they were on the wrong side of the road, that they were driving at an excessive rate of speed, and that they did not have their car under control at the time of the accident. This requires a discussion of the evidence.

There were no eyewitnesses to the collision, other than respondents and William Degler. However, Chet Spencer, a highway patrolman, arrived on the scene shortly after the accident, and it is because the trial court failed, as appellants argue, to accept the testimony of Mr. Spencer, as to the location of the cars relative to the center of the road at the time of the collision, that error is based upon the finding that respondents were on their right side of the road and

appellants on the wrong side at the time of the accident.

While Mrs. Gaisell may have made some contradictory statements relative to the location of respondents' car as to the distance it was west of the intersection at the time of the accident, she at all times testified positively that respondents' car was on the right-hand side (respondents' side) of the Hunter's Point road at the time of the collision. This witness was asked, among others, the following questions:

"Q. Mrs. Gaisell at the time we took the recess you identified on plaintiffs' exhibit No. 14 [this was a picture showing particularly the two roads at the intersection, the Edgewater Beach road turning to the left and the Hunter's Point road turning to the right, and the V in between covered with loose gravel] the course that you were taking as you were going around the curve into the highway that leads into Olympia [Hunter's Point road]? A. Yes. Q. Now tell the court whether or not you saw a car coming from the west? A. No. Q. I mean down what we call the Hunter's Point road, did you at any time see a car coming toward you? A. No, except just before the accident. Q. Well, you did see a car, that is what I am getting at coming toward you? A. Just a second before. . . .

"Q. Now where was your car with reference to the middle of the highway on the right or the left hand side when you first saw this car coming? A. Well we were very close to the right hand side. Q. Close to your right hand side and was there any hill or elevation there? A. Yes indeed there was. Q. That was down the Hunter's Point road west you mean? A. Yes."

Charles C. Swartwood, an engineer, who drew a plat of the two roads, and who made measurements on these roads from a point he designated as the middle of the intersection, which point is in the V-shaped area hereinbefore referred to, and east of the west fence

line of the Edgewater Beach road extended, testified, as we understand it, that it was one hundred fifty feet from the center of this intersection to the highest point on the raise to the west on the Hunter's Point road, and that, to the west from the intersection, the road raises five and one-third feet in that distance to the summit.

Again referring to Mrs. Gaisell's testimony:

"Q. And can you tell the court the distance you think it was from your car to the car when you first saw it coming down the Hunter's Point road, how far was it away from you? A. Just before I saw the car? A. No, when you saw the car coming toward you down the Hunter's Point road about how far away was it from your car? A. Well it just come over the hill and right at us. It wasn't any distance it seemed to me. Q. It was coming over the hill? A. Yes. Q. That is the car that collided with you? A. Yes, coming over the hill toward us. Q. What did you do when you saw this car coming? A. The minute I saw it I slammed on my brakes and my clutch and just at the time we was turning he hit us. Q. Where did this car hit you, what part of the car hit your car, the car you were driving? A. Well it hit us directly in the front and mostly on my side."

Plaintiffs' exhibits Nos. 7 and 8 purport to show appellants' car after the collision, and from these pictures it appears that this car struck something head on. Plaintiffs' exhibits Nos. 9 and 10 are pictures of respondents' car after the accident, and from these pictures it appears that this car struck something, or was struck by something, in front but more to the left side, as indicated by the condition of the left fender, left light, and left side of the radiator. The right light does not appear to have been broken.

Again referring to Mrs. Gaisell's testimony:

"Q. And when the cars collided at the time of the impact now where was your car with reference to the center of the road—first, tell me, I will ask you, was

there a center stripe down the road at that time? A. I don't think there was a center line. Q. Can you tell the court about where your car was at the time of the impact with reference to the center of the road, the right or left hand side of the road? A. It was way over to the right hand side. Q. And tell the court whether or not you noticed this oncoming car, where it was traveling with reference to the center of the road, the car that ran into you? A. It was traveling on the wrong side of the road. Q. You mean the left hand side? A. In front of us. Q. Toward you? A. I don't know how to explain—he was on the wrong side of the road, not on his side but in front of us."

This witness further testified that, when respondents' car was struck, it was pushed back about twenty-five or thirty feet, and came to rest near some mail boxes.

On cross-examination, Mrs. Gaisell again testified that respondents' car was entirely on its right-hand side of the road, and only a foot or so from the right-hand edge at the time of the collision.

Mr. Thorstenson, the other respondent, corroborated Mrs. Gaisell's statement that, as respondents' car approached the intersection, it was slowed down to ten or fifteen miles per hour; that, as they came to the intersection, Mrs. Gaisell sounded her horn, as the view to the left was obstructed until they got around the turn; that respondents' car was on the right-hand side of the road when they first saw appellants' car come over the hill, and that appellants' car was on the wrong side of the road; that the collision occurred on respondents' side of the road.

William Degler, appellants' son, who was driving appellants' car and was the only one in the car, testified, in part, as follows:

"Q. Now, as you approached this intersection, William, where were you when you first noticed the Gaisell car, the car that Mrs. Gaisell was driving? A. Well, I would say as near as I can remember, I

was beyond the top of the hill—between the top of the hill and the mail boxes [Mr. Swartwood testified it was about ninety feet from the mail boxes to the top of the hill]. . . . Q. Now, where was the Gaisell car when you first saw it, then, when you say you first saw it, you say you were 50 feet west of the mail boxes or about half way between the mail boxes— (interrupted) . . . Q. Assuming that the plat shows this to be 100 feet between the mail boxes and the top of the hill, what would you say your distance was from the mail boxes? A. I would say I was about 50 feet east. Q. Where was the Gaisell car then when you saw it? A. She was coming up on my side of the road right next to the curve. Q. And coming from what road? A. The Edgewater Beach road. Q. And can you tell us how fast she was coming? A. Well, as near as I could estimate her speed, it was between 35 miles an hour and 40 miles an hour. Q. And just describe the route that she traveled over up until the time of the collision, where did she stay with reference to the center line of the road? A. Well, she stayed on her extreme left-hand side of the road all the way up. She kept right close to the mail boxes all the way up. Q. Now, where did the collision occur, as you remember it, with reference to the mail boxes there? A. Well, as near as I can figure out, as I remember it, it occurred about five feet, five to ten feet west of the mail boxes. Q. And where was your car with reference to your right-hand side of the road at the time the collision occurred? A. You mean after the cars had stopped? Q. Yes, at the moment of the collision? A. I came up about, I would say, it was a foot and a half or two feet from my side of the road, to the right-hand side. . . . Q. How far away from you would you say she was when you saw her? A. Well, about thirty or forty feet, I would say. Q. And you put on your brakes then, did you? A. I did. Q. How far did you go from the time you put on your brakes until the collision occurred? A. Oh, I would say from nine to ten feet. I couldn't be definite about that."

At this point we desire to refer to appellants' contention that respondents were guilty of contribu-

tory negligence. Appellants contend that Mrs. Gaisell was not looking or she would have seen appellants' car and made an effort to change her course. Appellants argue that, as respondents' car rounded the turn onto the Hunter's Point road, the driver could see a car at least two hundred feet. It will be remembered that Mrs. Gaisell testified that she did not see appellants' car until just a second or so before the impact. We are unable to say at just what distance one coming onto the Hunter's Point road from the Edgewater Beach road could see a car coming from the west, but, in any event, appellants' own witness, the driver of appellants' car, testified he did not see respondents' car until it was within thirty or forty feet of him. Considering all the testimony, we are unable to say that respondents were guilty of contributory negligence in not seeing appellants' car before they did, or in time to attempt to avoid a collision.

Going back now to the evidence relative to the location of the cars on the highway at the time of the collision, appellants contend that the trial court should have taken the testimony of Officer Spencer, which appellants argue shows respondents' car was not on its right side of the road at the time of the accident, at least not altogether. Officer Spencer arrived on the scene shortly after the accident, at which time appellants' car had been moved down onto the graveled part of the intersection, and respondents' car was where it had been knocked back by the collision. Mr. Spencer took some measurements, and he testified that the accident took place forty-eight feet eight inches west of the fence line of the Edgewater Beach road. It may be assumed the court took this testimony, as it found the collision occurred forty-eight feet eight inches west of the fence line of that road. Mr. Spencer also testi-

fied the road was twenty-two feet five inches wide at the point of impact.

What really determined the point of impact for Mr. Spencer was some debris on the road, consisting of glass, some metal, and some water from a radiator. He testified that it was twelve feet five inches from the center of this debris to the south side of the road, which would be respondents' side. Appellant argues that the center of the debris indicates where the center of respondents' car was at the time of impact, and, assuming that the car was six feet wide, that would place the left side of respondents' car nine feet from the south side of the road, and would show that it was over at least two feet two and one-half inches on appellants' side of the road.

We are mindful of the fact that physical facts sometimes are more convincing than oral testimony, but in this case we are certainly not convinced that the court was bound to accept the theory of Mr. Spencer, for it was only a theory, as he himself stated, as to the exact location of respondents' car at the time of the impact, based upon some debris, in the face of positive testimony as to the location of respondents' car.

Also, in connection with the alleged negligence of appellants and their contention that the court erred in finding that their car was being operated at an excessive and unlawful rate of speed, under all the circumstances then existing, and, in view of the fact that this intersection was obstructed, appellants argue that, even though this intersection was obstructed, they were permitted, under the provisions of Rem. Rev. Stat., Vol. 7A, § 6360-64 (2) (e) [P. C. § 2696-891] to drive at thirty-five miles per hour.

Again it will be remembered that the court found that, at the time of the collision, appellants' car was being operated at a speed of thirty to thirty-five miles

per hour, and that, this being true, under the conditions existing, it could not have been stopped in less than seventy-nine to one hundred three feet. This finding is amply supported by the evidence.

It is true, as contended by appellants, that the particular subsection referred to authorizes a speed of thirty-five miles per hour in traversing any intersection of a public highway outside of an incorporated city or town, where the operator's view is obstructed, but subsection 1 of § 6360-64 also provides that every person operating or driving a vehicle of any character upon the public highways of this state shall operate the same in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of traffic, weight of vehicle, grade and width of highway, condition of surface, and freedom of obstruction to view ahead, and consistent with any and all conditions existing at the point of operation so as not to unduly or unreasonably endanger the life, limb, property, or other rights of any person entitled to the use of such public highways.

Subsection 2 of § 6360-64 provides that

"Subject to the provisions of subsection (1) of this section and except in those instances where a lower maximum lawful speed is provided by this act or otherwise, it shall be unlawful for the operator of any vehicle to operate the same at a speed in excess of the following:   . . ."

Then follows, among others, paragraph (e) referred to by appellants.

That the maximum speed indicated by the statute is not permitted to the operator of a car under any and all conditions is indicated by subsections 1 and 2, *supra,* and by our decision in *Copeland v. North Coast Transportation Co.,* 169 Wash. 84, 13 P. (2d) 65, wherein we stated:

"The motor-vehicle law indicates by its provisions that the maximum rate of speed is not always permissible, under any and all circumstances, but must be reasonable and proper under the existing conditions at the place of operation, one of those conditions being freedom from obstruction of the view ahead."

■ Under the facts in this case, we are of the opinion the court was justified in finding that appellants' car was being operated at an excessive and unlawful rate of speed, under all the circumstances existing at the point of impact, and that the court was also justified in finding that appellants did not have their car under proper control, in view of all the circumstances, including the fact that it could not have been stopped in less than seventy-nine to one hundred three feet.

The intersection which appellants' car was approaching was entirely obstructed, in so far as the Edgewater Beach road was concerned. The car was being operated on a five per cent down grade. The driver of appellants' car was well aware of all these conditions, and, in our opinion, he did not use reasonable care in approaching the intersection.

■ Appellants make one more contention, bearing on the claimed contributory negligence of respondents. Appellants contend that respondents, in turning onto the Hunter's Point road, cut the corner; in other words, that in making the turn respondents did not pass to the right of the point where an intersection marker would be located, even though there was actually no marker there.

We appreciate that Rem. Rev. Stat., Vol. 7A, § 6360-86 [P. C. § 2696-844], provides that, upon turning to the left at any intersection, it shall be unlawful for the operator of a vehicle to make such turn to the left unless all wheels of the vehicle shall pass to the right

of the center of such intersection, and that, in the event no intersection center marker or intersection entrance marker is installed at an intersection, left turn may be made as though intersection entrance markers are installed, and such turn made with reference to the points at such intersection where such intersection entrance markers would properly be located.

In the first place, no official plat was introduced showing the exact lines of these two roads at the intersection, so that the point indicated on a drawing introduced in evidence as the center of the intersection could be nothing more nor less than an assumption on the part of the engineer who prepared the drawing. In the second place, the accident did not happen at the intersection, but respondents had passed through the intersection, and, as the court found, were on their right side of the Hunter's Point road at the time of the accident, so that, assuming that they did cut the corner, we are unable to see that such fact contributed to the accident.

There is other testimony in the record, some of which tends to corroborate the contentions made by respondents, and some of which tends to corroborate appellants, but we have set out at some length the testimony which we feel is controlling and which justifies the findings made by the trial court.

We are satisfied that the court was right in concluding that appellants were negligent and that such negligence was the proximate cause of the injuries and damage suffered by respondents, and in concluding that appellants' cross-complaint should be dismissed.

The judgment of the trial court is affirmed.

ROBINSON, C. J., BEALS, STEINERT, and MILLARD, JJ., concur.