RICHARD CARMODY AND ANOTHER v. ESTHER AHO, SPECIAL ADMINISTRATRIX OF ESTATE OF HERBERT AHO.
ESTHER AHO v. RICHARD CARMODY.
ESTHER AHO, TRUSTEE OF NEXT OF KIN OF HERBERT AHO, v. SAME.

86 N. W. (2d) 692.

November 8, 1957—Nos. 37,050, 37,053, 37,054, 37,051.

20

*Spellacy, Spellacy & Lano,* for Esther Aho.

*Lewis, Hammer, Heaney, Weyl & Halverson* and *D. A. Bourgin,* for Lila Carmody and Richard Carmody.

KNUTSON, JUSTICE.

This case comes to the writer on a reassignment. It arises out of an automobile collision between a car driven by Richard Carmody, in which his wife, Lila, was riding as a passenger, and an automobile driven by Herbert Aho, in which his wife, Esther, was riding as a passenger. Actions were brought by Richard Carmody to recover for his personal injuries and special damages and, as guardian ad litem of his minor wife, to recover for her personal injuries and by Esther Aho against Richard Carmody to recover for her personal injuries and, as trustee, to recover for the wrongful death of Herbert Aho, who was killed in the accident. The cases were consolidated for trial. The jury returned a verdict in favor of Lila Carmody for $25,731.98 and one for Esther Aho for $45,908.33. In the other actions, the verdicts were for defendant. Implicit in these verdicts is a finding that the negligence of the drivers of both cars proximately contributed to the collision. The trial court, on a motion for a new trial, reduced the verdict in favor of Lila Carmody to $20,000, which was accepted by plaintiff. Appeals were taken to this court by Richard Carmody in the case brought by him as plaintiff and in the case brought against him by Esther Aho and by Esther Aho as administratrix in the case brought by Richard Carmody as guardian ad litem for his wife and as trustee for the next of kin of Herbert Aho in the case against Richard Carmody. All of the appeals were from orders denying the respective motions of the parties for judgment notwithstanding the verdict or a new trial. The appeals have been consolidated for hearing here.

The facts essential to a determination of the issues raised here may be summarized as follows: The collision occurred on June 8, 1955, at about 11:30 a. m. about one and one-half miles west of Embarrass, in this state, on Trunk Highway No. 21, which runs in an easterly and westerly direction for some distance both ways from the point of the accident. It was raining quite heavily at the time of the collision.

Visibility was quite limited. Some witnesses testified that they could see 200 feet, while others testified that they could see as much as two city blocks ahead of them. The road was black-topped, but slippery. Carmody and his wife were traveling west toward Aurora. Carmody testified that he was at all times on his right half of the road, which, due to the direction in which he was driving, would be the north half. He testified that he was traveling between 40 and 45 miles per hour prior to the collision. He said that he saw the Aho car approaching from the opposite direction and, when it was about 300 feet from him, he observed it come over to his side of the road. It then returned to its own side. When it first came over to his side he removed his foot from the accelerator, but he resumed his driving when the Aho car returned to its own side of the road. He then said that when the Aho car was about 75 feet from him it again skidded to his side of the road and the collision occurred almost immediately. He estimated the speed of the Aho car at 55 to 60 miles per hour.

Mrs. Carmody was busy trying to get a program on the radio, so she did not observe the approaching Aho car. She did testify that shortly before the accident her husband said: "Look at that crazy car," and that she then resumed her efforts to get a program on the radio and paid no attention to the approaching car until her husband said "Look out!" at which time she looked up to see the Aho car slide into their car.

Herbert Aho was killed in the collision. Mrs. Aho suffered a retrograde amnesia, so she could not recall what happened.

From photographs in evidence, it appears that the right front of the Aho car collided with the left front of the Carmody car. After the collision, the Carmody car came to rest north of the traveled portion of the highway facing in a southerly direction. The Aho car came to rest about 20 or 30 feet east of the Carmody car, south of the traveled portion of the highway, also facing south. Mr. Carmody was thrown out of the car, and Mrs. Carmody was at first partly out of the car on the driver's side and later either fell all the way out or was helped out, depending on what witnesses were correct in their version of what they found. Both were found north of the highway. Mr. Aho's body was also found north of the highway about ten feet east of his car.

Mrs. Aho was found south of the highway in front of their car.

There were two gouges in the south half of the highway near the accident, one of which was shown to have been caused when the Aho car was pulled out of its resting place. The witnesses differed as to whether these gouges were newly made or if it could be determined that they were new or old. There was much conflict as to the location of debris, such as dirt, glass, and other portions of the automobile. Some of the witnesses testified that such debris was found all over the road. Two witnesses testified that it was mostly on the south half of the road, while two other witnesses testified that it was mostly on the north half of the road. Two deputy sheriffs said that it was about equally divided on both sides of the road.

Confronted with this evidence, Mrs. Aho called Adolph Orlando Lee as an expert witness. He is an assistant professor of mechanical engineering at the University of Minnesota, where he teaches in the area of heat and power. Based on the physical evidence as to the position of the automobiles; the damage thereto as shown by photographs; the debris and gouges on the highway; and the location of the bodies of the individuals who were in the cars, he was permitted to reconstruct the collision and to state as his opinion that the collision occurred in the south lane of the highway. The propriety of admitting this opinion evidence presents the only question we need determine on this appeal since we are convinced from the record before us that questions of negligence, contributory negligence, and proximate cause were otherwise properly submitted to the jury.

■ The general rules applicable to the admissibility of expert testimony are not difficult to ascertain and have been stated so often by this and other courts that it seems useless to repeat them. As a general rule, the preliminary question whether a witness has the necessary qualifications to testify as an expert is left to the sound discretion of the trial court.[1] None of the parties have raised any question as to the qualification of Mr. Lee as an expert in the field of engineering, so we need not spend any time on that phase of the case.

■ The admissibility of such evidence also generally rests in the

[1] 7 Dunnell, Dig. (3 ed.) § 3335.

sound discretion of the trial court. Many of the cases on this subject are collected in our opinion in Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629. It would serve no useful purpose to restate the law here. While the general rules are readily ascertainable, the application of these rules to specific cases is not always so easy. No hard-and-fast rule can be promulgated which will apply to all cases. The discretion of the trial court is not one that is never subject to review. It is circumscribed by other established rules that are equally applicable.

■ In the first place, the opinion of expert witnesses is intended to be used only where, because of superior learning or experience, the witness is more capable of formulating a correct opinion on the subject matter involved than are the members of the jury.

■ The opinion is intended to assist the jury in arriving at a correct conclusion, not to substitute the judgment of the expert for that of the jury in a case where members thereof are as capable of appraising the evidence and arriving at a correct conclusion as is the expert.

■ Where the opinion is not based on the application of any special skill, learning, or experience but is simply the judgment of the expert based on facts or assumptions equally available to the jury and understandable by them, the opinion of such expert is not admissible. Opinion evidence of an expert is not admissible simply because he is an expert in some field or another, but it is admissible, if at all, for the reason that his special knowledge and skill may be of assistance to the jury in arriving at a correct conclusion where the subject matter is of such a nature that the jury ordinarily would be unable to do so as well as the expert. On the other hand, where the subject matter is of such a nature that it ordinarily would lie within the knowledge or experience of people of common intelligence, the opinion of experts should not be permitted as a substitute for the combined opinion of the jury. Any other rule would soon lead to trial by experts instead of by witnesses, and jury trials as we have known them would soon be a thing of the past.

Where the facts are in dispute, the function of the jury involves a determination of the credibility of witnesses and the weight to be given

to their testimony. That is true in this case. If the testimony of Mr. Carmody were believed, the opinion of the expert would be completely erroneous. On the other hand, if the jury did not believe Mr. Carmody, they were as capable as Mr. Lee of judging from the physical facts in evidence—upon which the expert also must rely—how, when, and where the collision occurred. The ultimate decision in this case depends quite largely on a determination of whether the collision occurred in the north or south lane of the highway or possibly in the center thereof. Mr. Lee based his opinion quite largely on a few factors which were equally understandable by the jury. His testimony on cross-examination was as follows:

"Q. What is it specifically that tells you that the accident was on the south side of the road?

"A. First, the position of the bumper guard; second, the gouge mark, marked 'P' in those Exhibits 1 and 2; and, thirdly, orientation of the location of the people and vehicles after they came to rest, with knowledge of the initial traveling directions prior to the accident being generally easterly or eastbound for the Aho car, the Buick, and generally westerly for the Pontiac."

He assumed that both cars were skidding toward each other in a sidewise direction immediately prior to the impact. The damage to the cars is the only evidence which would justify such assumption.

In Romann v. Bender, 190 Minn. 419, 424, 252 N. W. 80, 82, in considering a matter of this kind, we said:

"* * * What will happen when two cars meet head-on or at an angle, one or both going from 30 to 40 miles per hour just before meeting, is beyond safe prediction; and especially it is so when their drivers are consciously or involuntarily seeking to direct their movements. Surprising results sometimes follow, and after a collision the markings on the cars and on the road and the location of the cars are not sure proof of just how the accident happened, though they may be helpful to the jury."

Following that case, we said in Beckman v. Schroeder, 224 Minn. 370, 377, 28 N. W. (2d) 629, 633:

"So, in this case, surprising results followed the collision. There was a brake, accelerator, and steering wheel on each car, under the control and direction of each driver. Voluntary or involuntary actions on the part of either driver or both could determine the result of the collision as well as cause it. Natural laws in such a situation are not free to operate. Human intervention can and does have a determining influence."

Our decision in that case, holding that the opinion of an expert seeking to reconstruct the accident is inadmissible, is cited in 9C Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 6311, in support of the statement:

"Normally, expert testimony is inadmissible to show how and where an accident took place, or the position of the automobiles."

What we said in the above cases is equally true here. While no one can predict with any degree of certainty what the gyrations of two automobiles colliding at an angle will be, we believe that jurors of ordinary intelligence are just as capable of reasoning backward from the evidence and making a correct analysis of what happened as is the expert. So much depends on the actions of the drivers of the cars in consciously or instinctively attempting to avoid the collision or to minimize its effects that it is well-nigh impossible to reconstruct the accident from the final resting place of the automobiles. The same is true of the location of the bumper upon which this expert places so much importance. Whether it fell straight down or flew through the air on impact, as glass and other debris must have done to cover the road as the evidence shows, or whether it remained exactly where it landed while the cars were spinning around on the highway is something an ordinary juror can surmise as well as an expert. This also is true of the position of the bodies of the occupants. Whether they moved or how they got where they were when first observed can be determined by the jurors from the evidence. As a matter of fact, the same witness who testified to the location of the bumper testified that, when he arrived or after he arrived, Mr. Carmody stood up on both feet even though one leg was severely fractured. Whether this witness was more correct with respect to the location of the bumper than he was with respect

to Mr. Carmody's ability to stand was something which was peculiarly within the province of the jury to determine. While the expert placed little importance on other debris on the highway, Mrs. Aho seems to place considerable emphasis on a pile of dirt found in the south lane, but whether that dirt came from under the front or rear fender of the Aho car does not appear. It is entirely possible that the Aho car was skidding more or less sideways so that the front end was in the north lane and the rear in the south lane. Dirt then could well have fallen from the rear fender in the south lane while the front of the automobile was in the north lane. These are all matters which lie within the province of the jury to determine, and the opinion of the expert is no more than his judgment based upon the same facts as were available to the jury and without the application of any special training or skill as an engineer.

■ Under these circumstances, it is our opinion that it was error to permit the expert to give his opinion as to where the accident happened. In a close case such as this is, the impact of such testimony upon the jury easily can be a determining factor. We think that it was prejudicial error to admit it.

Mrs. Aho cites in support of the admissibility of this evidence, among other cases, our decision in Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241. That case is easily distinguishable from this. In the Woyak case, one car collided broadside with another. The question was whether the car which was hit on the side was standing still or moving. A witness qualified as an expert, who had examined thousands of wrecks, was permitted to state his opinion on this question. In that case the basic facts were definitely ascertainable. The opinion was based on a determination of whether there were marks on the automobile showing a lateral movement of the car that was hit. While that case may have presented a close question, it still was in the realm of inquiry where a person specially skilled in examining wrecked cars could assist the jury in determining whether there had been such lateral movement after the impact. Here, the basic facts are not only in dispute but are of such a nature that, based on the foundation laid in this case, the jury was equally competent to form an opinion as to what happened as was the

expert. It takes little expert knowledge to know that, when two automobiles collide at the angle shown here, they are apt to move in the opposite direction from which the force is applied. That is about all that was involved in the expert's testimony as to how the automobiles came to be where they were after the accident.

We are not unmindful of the fact that cases can be found supporting almost any view. Some of the cases are distinguishable. Some probably are not. Where the question involved actually can be better determined by expert opinion by the application of laws of physics or some other special skill or learning, such opinion evidence can in some cases be justified when a proper foundation is laid, but where, as here, the opinion of the expert is based upon the same evidence as is available to the jury and a layman of ordinary intelligence can equally well determine what happened, the applicable rules are as stated in Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629, and that decision governs here.

Mrs. Aho also contends that the verdict in favor of Mrs. Carmody is excessive even as reduced by the trial court. In view of the fact that the error in admitting the opinion of Mr. Lee permeates the entire case, there must be a new trial as to all parties. It therefore may be unnecessary to pass on the question of the excessiveness of this verdict or on other issues raised by the appeals. In passing, however, on the record before us we are convinced that the verdict still is excessive. Essentially, it is the function of the trial court first to pass on this question, and it is only where the verdict clearly is so excessive as to constitute an abuse of discretion that we will interfere after the trial court has passed on the question. If, however, the trial court fails properly to exercise its discretion, we believe that it still remains our duty to prevent a miscarriage of justice by not allowing a verdict to stand which is clearly excessive.[2]

Reversed and new trial granted as to all parties.

THOMAS GALLAGHER, JUSTICE (dissenting).

Based upon Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629, the majority holds that the trial court erred in receiving the expert

---

[2]Cox v. Chicago, R. I. & P. R. Co. 250 Minn. 187, 84 N. W. (2d) 263.

opinion of Adolph Lee as to the location of the accident upon the highway. In that case, as indicated above, we held that it was error to admit the opinion of a deputy sheriff as to the point of collision between two automobiles involved in a highway collision.

Generally, before resort may be had to expert testimony, it should appear that the subject to which it relates is one not ordinarily within the knowledge of the average layman; and that the witness who is called to testify thereon possesses training, education, or experience which provides him with knowledge and information on the subject superior to that of the average person. Noe v. G. N. Ry. Co. 168 Minn. 259, 209 N. W. 905; Swanson v. LaFontaine, 238 Minn. 460, 57 N. W. (2d) 262.

The trial court is given wide discretion in determining whether the subject is one upon which expert testimony would be of assistance, and whether the expert called to testify thereon is qualified by his training and knowledge to offer information not within the knowledge of the average layman. Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133; Smith v. Twin City Motor Bus Co. 228 Minn. 14, 36 N. W. (2d) 22. The trial judge may always exercise his discretion in weighing the danger of admitting expert testimony against the danger that its exclusion might militate against justice.

Here it seems clear that the trial court did not abuse its discretion in receiving the testimony of Professor Lee as to the location of the point of contact between the two automobiles. There can be no dispute as to his qualifications to testify on the subject. He is an assistant professor of mechanical engineering at the University of Minnesota. He testified that his work at the University of Minnesota covered instructions in the area of thermodynamics, engines, and design in the elements of automobile engineering parts and mechanisms; that he had done a substantial amount of work in the field of physical forces, velocities, and accelerations involving laws of motion and force; and that during the preceding five years he had been called upon to analyze between 40 and 50 automobile collisions per year with the idea of determining how the automobiles involved had come in contact with each other.

Further, the limited evidence on the issue as to the point of contact

between the two vehicles made this subject one in which an expert in the field of physical forces, velocities, and accelerations might be of considerable assistance to the jury. In this situation, the trial court exercised its discretion in receiving the challenged expert testimony, and for this court to hold that in so doing it abused its discretion is to far exceed our functions in the review of discretionary matters.

It is obvious that the situation differs from that involved in Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629, where the expert's opinion was based upon testimony of other witnesses; where the witness expressing it did not appear to have any skill or knowledge beyond that of the average person; and where the jury was as capable of weighing the evidence submitted and arriving at a conclusion based thereon as was the witness. In such cases where both parties have presented their versions of the accident through eyewitnesses and where the expert called to testify cannot be said to have had any training in the field involved beyond that of the average layman, there is no room for the exercise of judicial discretion, and the so-called expert testimony should, of course, be excluded. But where, as here, the only eyewitness to an accident is an interested party, and the jurors may not possess the special training necessary to reconstruct it on the basis of the physical evidence available, it would seem that expert testimony thereon would be of great assistance to the jury.

This view is in accord with that of a number of decisions in this court. Storbakken v. Soderberg, 246 Minn. 434, 75 N. W. (2d) 496; Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241; Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371; Lestico v. Kuehner, 204 Minn. 125, 283 N. W. 122; Carson v. Turrish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154. A number of other jurisdictions have likewise adopted this point of view. See, Een v. Consolidated Freightways (D. N. D.) 120 F. Supp. 289, affirmed (8 Cir.) 220 F. (2d) 82; Zelayeta v. Pacific Greyhound Lines, 104 Cal. App. (2d) 716, 232 P. (2d) 572; People v. Haeussler, 41 Cal. (2d) 252, 260 P. (2d) 8; Wells Truckways v. Cebrian, 122 Cal. App. (2d) 666, 265 P. (2d) 557; Ison v. Stewart, 105 Colo. 55, 94 P. (2d) 701; Ferguson v. Hurford, 132 Colo. 507, 290 P. (2d) 229; Nielsen v. Wessels, 247 Iowa

213, 73 N. W. (2d) 83; Beaudin v. Continental Baking Co. 94 N. H. 202, 50 A. (2d) 77; Thorstenson v. Degler, 15 Wash. (2d) 211, 129 P. (2d) 996. (There is an interesting discussion of the subject in Een v. Consolidated Freightways, *supra*. Therein, Beckman v. Schroeder, *supra,* is considered and distinguished.)

MURPHY, JUSTICE (dissenting).

I join in the dissenting opinion of Mr. Justice Thomas Gallagher.

FRANK T. GALLAGHER, JUSTICE (dissenting).

While I agree that cases like this should not be permitted to develop into a "trial by experts instead of by witnesses," it is my opinion, under the situation here, that Mr. Justice Thomas Gallagher has satisfactorily distinguished Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629, and that the matter of admitting the expert testimony in the case at bar was within the discretion of the trial court. I believe that, in the exercise of that discretion, trial courts will not permit a so-called "expert" to run rampant where there is no foundation laid as to special or scientific knowledge of the subject matter beyond that of an average person. We have a situation here where the evidence was limited with reference to the place on the highway where the two cars came in contact and it seems to me that permitting a witness with Mr. Lee's training, qualifications, and experience to testify was discretionary with the trial court under the circumstances.