Hilda **BAKER, Plaintiff-Respondent-Appellant,**

v.

**FORD MOTOR COMPANY and Wilson Lasater d/b/a Lasater Ford Sales and Service, Defendants-Appellants,**
and
**Raymond I. Baker, Administrator of the Estate of Lenora May Baker, Defendant-Respondent.**

No. 57340.

Supreme Court of Missouri, Division No. 1.

Sept. 10, 1973.

Rehearing Denied Nov. 12, 1973.

Ike Skelton, Jr., Lexington, John C. Milholland, Harrisonville, for appellant Hilda Baker.

John M. Kilroy, Fred Wilkins, Shughart, Thomson & Kilroy, Kansas City, for appellants Ford Motor Co. and Wilson Lasater d/b/a Lasater Ford Sales and Service.

Thomas A. Sweeny, Kansas City, for respondent Raymond I. Baker; Popham, Popham, Conway, Sweeny & Fremont, Kansas City, of counsel.

WELBORN, Commissioner.

Action for damages for personal injuries received in automobile collision. Jury returned verdict in favor of plaintiff and against two defendants for $35,000. Verdict was in favor of third defendant. Defendants appealed from judgment adverse to them and plaintiff appealed from judgment adverse to her on claim against third defendant. (Notice of appeal filed prior to January 1, 1972.)

On the afternoon of August 27, 1968, Mrs. Lenora Baker came to the Lasater Ford Sales & Services, a Ford automobile agency in Buckner, Missouri, owned by Wilson Lasater. Mrs. Baker was interested in buying a new Ford. One on the showroom floor appealed to her and after a six to eight-mile demonstration ride with a salesman, Mrs. Baker decided to purchase the auto. The transaction was not completed because her husband had to sign some of the papers involved, but the license plate from Mrs. Baker's old auto was placed on the Ford and she drove it from the agency at around 4:00 or 4:30 P.M. The salesman estimated that at the time Mrs. Baker left, the Ford had 12 miles on its odometer.

Just where Mrs. Baker went after leaving Buckner is not known. She obviously drove east toward Lexington because at approximately 5:00 P.M., she was proceeding west on U.S. Route 24, five or six miles west of Lexington. Miss Hilda Baker was driving east on Route 24. Mrs. Baker's Ford was coming down a slight incline and on her side of the road. When her auto was a short distance from Miss Baker's vehicle, the Ford abruptly crossed the center line into the eastbound lane and Miss Baker's auto struck the Ford in the area of the right rear wheel. The Ford went into a ditch on the south side of the road and the other vehicle was turned completely around. The odometer on Mrs. Baker's auto showed 54 miles. Mrs. Baker died of the injuries she received. The injuries to Miss Baker, not here in issue, were the basis of her claim for damages.

Miss Baker sued Ford and Lasater as manufacturer · and seller, respectively, of the Ford auto, on the basis of strict liability arising from the manufacture and sale of a defective vehicle. The position of plaintiff with respect to those defendants was that the brakes on the Ford were defective, causing its right rear wheel to lock so that the driver was unable to control it and it crossed the center line of the highway and collided with plaintiff's auto. The claim of plaintiff against the administrator of Mrs. Baker's estate was sought to be submitted on the grounds of negligence of Mrs. Baker in operating a vehicle with defective brakes and in driving on the wrong side of the road. The trial court refused the first submission and plaintiff's claim against the administrator was submitted on negligence in driving on the wrong side of the road.

A highway patrolman who investigated the accident found a single skid mark some 150 feet long in the westbound lane, near the north edge of the pavement. The skid mark led to the shoulder on the north side and appeared on the shoulder for about 108 feet. Then the mark reappeared on the pavement, along with other marks, veering to the south, across the center line, leading to the point which the debris from the collision indicated as the point of impact.

Plaintiff's strict liability theory was that the single skid mark was the result of the right rear wheel's locking because of a defective brake. Evidence pointed to the

brake defect either as being the failure to install hold down springs in the right rear brake assembly or as being the result of a defective seal in the axle assembly which permitted transmission lubricant to reach the brake linings, causing the brake to lock. The evidence of Ford was designed to show that neither the absence of the springs nor the presence of lubricant on the brake lining would have caused the brake to lock. It also was designed to show that the missing springs had been displaced in the collision and that the apparent damage to the lubricant seal in the right axle was also the result of the collision.

The first point on this appeal raised by Ford and Lasater relates to a ruling on an objection by trial counsel for Ford. (Ford and Lasater had separate trial counsel. They are represented by single counsel on appeal, the Ford trial counsel, and their briefs are joint briefs.) In the course of the examination of the trooper by counsel for plaintiff, the following occurred:

"Q Did you determine who the driver of the Ford automobile had been? A Yes, sir.

"Q Now, will you tell the jury who that was?

"A A Lenora Baker from Independence.

"Q Was she able to talk to you, Sergeant?

"A No, sir; she was not.

"Q To refresh your recollection, I want you to look at your report and see if you recorded a statement that she made.

"A (Indicating.) She said—

"Q I am speaking of the driver of the Ford, now.

"A Yes. Now, I see in my statement that, 'I don't know what happened'; but this was not obtained at the scene. I thought—

"MR. KILROY: I object to it, Your Honor. Ask it be stricken.

"Q (By Mr. Milholland) Did you talk to her some place besides at the scene? A At the hospital.

"Q All right. Did you determine who the driver of the '67 Chevrolet was? A Yes, sir.

"Q Who was that?

"A Hilda Baker, from Lexington, Missouri.

"Q Did you notice any appearance of injury about Miss Baker, the one from Lexington, the driver of the Chevrolet—or —yes, the Chevrolet?

"A Yes; Mrs. (sic) Baker was injured.

"Q Did you make a note on your report of the injuries that you noted?

"A She was very obviously injured, and we put her in an ambulance and she was taken to a hospital. And the information I have on my report was obtained at the hospital; not at the scene.

"Q All right. Did you—

"MR. KILROY: Excuse me just a moment, John. If Your Honor please, on the objection I made while ago, objecting to something else, I didn't know the Court made a ruling on it.

"THE COURT: Objection will be overruled."

■■ Appellants Ford and Lasater now contend that the trial court erred in refusing to strike prejudicial hearsay testimony given by the highway trooper. Ford acknowledges the general nature of its objection but attempts to demonstrate that the statement was not admissible for any purpose and thereby takes advantage of the rule which holds a general objection sufficient in such circumstances. See Smith v. Fine, 351 Mo. 1179, 175 S.W.2d 761, 768 [13, 14] (1943). The situation is here complicated by the fact that Ford was the

only objector among three defendants and its objection in no way sought to limit the relief sought to Ford. Therefore, under the rule which Ford invokes, if the testimony was admissible for any purpose as to any of the defendants, Ford's general objection will not provide a basis for reversible error. 4 C.J.S. Appeal & Error § 290(4) p. 889 (1957).

Under the rule laid down in Friederich v. Chamberlain, 458 S.W.2d 360 (Mo. banc 1970), regarding negligence in driving on the wrong side of the road in skidding situations, the statement was a statement against the interest of the defendant administrator of the estate of Lenora Baker. The statement tended to show that Mrs. Baker had no explanation for her presence on the wrong side of the road, and, therefore, no defense to a charge of negligence in driving on the wrong side of the road. See Friederich v. Chamberlain, supra.

Appellants Ford and Lasater argue that the statement was not inconsistent with the position of the defendant administrator at the trial that the defective brake caused Mrs. Baker to go onto the wrong side of the road. This argument is without merit. The driver of an automobile would ordinarily have been aware that a wheel on the vehicle suddenly locked and threw it out of control. Mrs. Baker's statement was at least circumstantial evidence that such had not occurred and was thus inconsistent with the administrator's trial position. Ford made no request that the evidence be limited as to it and the trial court's failure to exclude the evidence on Ford's general objection was not error.

The next point of appellants Ford and Lasater relates to cross-examination by counsel for the Baker estate of an expert witness presented by plaintiff Baker. The witness, Mr. William K. Matthews, had testified for plaintiff that he examined the Ford after it had been removed, under protection of a court order, to a garage in Kansas City. He testified that his examination revealed no hold down spring on the rear secondary brake shoe on the right rear wheel of the Ford and revealed evidence of the presence of lubricant on the brake linings for the right rear wheel. He testified that the absence of the hold down spring could have permitted the rear secondary braking shoe to drag on the drum.

In his cross-examination of Mr. Matthews, counsel for the Baker estate elicited testimony from the witness as to the mechanics of what occurs when "a lady is driving down the highway and say there is an emergency situation and she applies her brakes hard." The witness testified that grease or oil on a brake lining can cause one wheel to lock. He testified further that in his opinion the fluid he found on the "right rear brake assembly had been there at the time of the collision. On further cross-examination, the following occurred:

"Q Let's assume that the hold down spring was there, present in this Ford automobile before this accident, but let's assume that there had been this rear axle lubricant in the brake drum area and that the lady for some reason, wanted to lightly touch her brakes to slow down slightly, maybe because a curve was coming up. Would the rear grease or the lubricant, could that cause that right rear wheel to lock?

"MR. KILROY: Just a moment, if the Court please. I object to that as assuming facts that are not in evidence. Specifically, he asked the witness to assume that there was some lubricant in there before the accident. There's no evidence of that. That point is the basis of my objection as the—

"THE COURT: Objection will be overruled.

"MR. KILROY: Is the Court overruling my objection?

"THE COURT: Objection will be overruled.

"A Yes; it could cause it to lock.

"Q (By Mr. Sweeny) All right. Then, let's assume further, that this same wheel is missing the hold down spring. Would you explain to the jury what the combination of those factors would mean?

"MR. KILROY: May it be understood, Your Honor, I am making the same objection to his asking the witness to assume as facts, what are not established in this record as fact, specifically a missing hold down spring and the presence of any lubricant before the accident?

"THE COURT: It will be so understood and your objection will be overruled.

"MR. KILROY: Thank you.

"A I was a little confused at what you mean by combination.

"Q (By Mr. Sweeny) Well, would you explain what, in your opinion, happens or would happen in the event you have the lubricant on this rear shoe, some minor amount of lubricant on the front shoe and no hold down spring?

"A In this condition, it would be possible for the retraction spring to cause the shoe, the secondary shoe to cant, rotate over and come in contact with the brake drum; it's even possible this could initiate braking by itself under these circumstances. But, assuming that there was a brake action in the normal course of driving, it would bring in this brake shoe and push it over against the drum more so, and you would start in to brake; but the lubricant, the situation—Well, both of them actually, the cocking action and lubricating action effectively will distort the frictional—the location of the forces on the shoe; it may stick more in one location than it does in another; it may slide more in one location than it does in another. And these forces all tend to rotate this shoe up towards the anchor point up at the top and cam the shoe into the brake drum; and it's possible that you can have a combination of forces that will cause this to continue to increase braking of its own, which is a cam type action. In other words, you would initiate the braking action and it brakes hard, even more than you would have started by your own initiative, and would continue to lock or brake more, which is what a locking is meant here, which would cause that wheel to skid, because it's no longer rotating between the drum and the brake shoe but has been effectively clamped together at this point by the high braking action or locking of the brake, which then causes that; particularly of the skid. That's what could happen.

"Q Is it your—Is your opinion, Mr. Matthews, consistent with a 150 foot single skid mark at an accident scene?

"A If it was the correct wheel skid mark.

"Q Right rear skid mark?

"A Right rear wheel; yes, sir.

"Q If my client, Lenora Baker; assuming that she was approaching a curve and lightly touched her brakes and then let up on the brake pedal, and assume that the right rear pedal locked—or the right rear wheel locked; would the brakes be released then on the other three wheels?

"MR. KILROY: Just a minute. I renew my objection to this kind of inquiry, assuming facts not in evidence and asking the witness to assume as a fact, which has not anywhere been proved.

"THE COURT: What specific facts are you speaking of?

"MR. KILROY: The application by his client of brakes, and whether or not the brakes locked up in there when she did so. These are things he's asked him to assume as facts. They are not established as facts by anyone.

"THE COURT: Objection will be sustained as to what his client did.

"Q (By Mr. Sweeny) All right. Let's assume that someone is approaching a curve in an automobile and lightly touches their brakes and that the right rear wheel

or drum assembly has oil or a lubricant in it, and assume that that person then removes their foot from the brake and starts to accelerate. Would the other three tires be locked up?

"MR. KILROY: Same objection for the same reasons.

"THE COURT: Objection will be overruled.

"A No. They would—They would release in the normal actual let up.

"Q (By Mr. Sweeny) So, that would cause one long single skid mark at your right rear tire?

"MR. KILROY: That's calling for speculation by the witness as to how long—

"Q (By Mr. Sweeny) I think he's right. That would cause the right rear tire only to skid?

"A Yes, sir; under those conditions.

"Q And if a car is in good working order and a brand new car, there is no way you could get one skid; you have got to have four if the brakes are working right, if the person's trying to stop; isn't that true?

"A Assuming—That's true, assuming—

"Q Going straight.

"A —the tires and road, and everything is all the same, and you are going straight."

Appellants here assert their claim of error as follows:

"A hypothetical question posed to plaintiff's expert witness Matthews included among the facts it asked to be assumed that the deceased operator of the Ford, Lenora Baker, had lightly touched the brakes, released the pedal and accelerated (Tr. 306). There was not one iota of evidence as to how and in what manner she applied the brakes or whether she released them and accelerated, but the Court nevertheless overruled the objection to such question and allowed the answer (Tr. 306). The opinion then given in that answer indicated that under those circumstances the right rear wheel alone would skid (Tr. 306, 307). That answer resolved against appellants what was the ultimate controverted issue in the case. The prejudice is apparent."

█ The witness had already expressed the opinion that the lubricant on the brake band could cause the right rear wheel to lock on application of the brakes. He had testified at length as to what might have occurred upon application of the brake with the combination of the lubricant on the brake lining and the missing spring. He had testified that his opinion was consistent with the 150' skid mark at the accident scene. Thus, prior to the interrogation now objected to, the witness had testified to the matters which appellants now assert "was the ultimate controverted issue in the case." Not having objected to the previous testimony, appellants are in no position to urge the ruling now attacked was reversible error. See State ex rel. State Highway Comm. v. Warner, 361 S.W.2d 159, 164 [7, 8] (Mo.App.1962) and cases there cited in footnote 3, p. 164.

█ Furthermore, the contention here advanced rests upon an erroneous premise. As above noted, the appellants' brief states that objection was overruled to a question which assumed that Lenora Baker had lightly touched the brakes. As the transcript previously quoted reveals, the question which made such assumption was objected to and the objection sustained. The trial court's ruling showed that it was based upon the objectionable assumption that Mrs. Baker had applied her brakes. The following question, to which objection was made which was overruled, did not hypothesize that Mrs. Baker had touched the brakes, but merely presented an abstract question. The only objection stated was "Same objection." In such circumstances, there is no basis for holding the ruling reversibly erroneous.

■ Finally, the damaging portion of the testimony now complained of came in subsequent interrogation of the witness to which no objection was made. Appellants would excuse the absence of objection on the grounds that they had made an objection which had been overruled and they were not required to restate this objection. As above shown, no objection had been made which squarely presented the objection now raised. As demonstrated by the transcript, there was a subsequent objection which resulted in the withdrawal of a question. The failure of appellants to voice their objection to the trial court precludes a claim of error here. Nichols v. Blake, 418 S.W.2d 188, 191 [7] (Mo.1967).

■ Appellants assert that the trial court erred in excluding the offer by Ford to show by an expert witness that tire marks appearing in photographs were made by rolling, not locked, wheels.

Ford's expert witness, Mr. Razak, was a consulting engineer with a master's degree in mechanical engineering. He testified that he had studied the effect of braking on tire marks and that a locked wheel produced a distinctive pavement mark, characterized by dark lines to the extreme edge of the mark and decreased intensity of the mark at the edge of the tire trail. On the basis of his knowledge in this area, Ford sought to adduce testimony from the witness as to whether or not marks shown in photographs taken at the scene of the collision here involved two days after the occurrence were made by locked or turning wheels. Ford offered specifically to prove by the witness that a single tire mark, previously identified as having led to the impact site, was made by a turning, not a locked, wheel. The trial court sustained objection to the offer. Appellants assert that such ruling was error.

Appellants cite no cases in which the exclusion of expert testimony such as here offered has been held reversible error.

"The question of the qualification of a witness as an expert in the field concerning which his testimony is sought and the *necessity for admission of expert testimony in a given situation rests in the first instance in the sound discretion of the trial court, and its decision in those respects is not to be set aside in the absence of showing of an abuse of discretion.*" (emphasis supplied) Yocum v. Kansas City Public Service Company, 349 S.W.2d 860, 864 [1] (Mo.1961). See also Jones v. Smith, 372 S.W.2d 71, 78 [11, 12] (Mo.1963); Dillenschneider v. Campbell, 350 S.W.2d 260, 266 [10, 12] (Mo.App.1961); Edwards v. Rudowicz, 368 S.W.2d 503, 506–507 [4–7] (Mo.App.1963).

In Housman v. Fiddyment, 421 S.W.2d 284, 292 (Mo. banc 1967), the court observed:

"* * * In these modern days nearly all jurors are experienced motorists. Marks and debris on highways at the scenes of collisions, examples of the damage done when automobiles collide and the results of the interaction of vehicles colliding are matters of common observation. As a result the modern-day juror in the average case is 'just as capable of reasoning backward from the evidence and making a correct analysis of what happened as is the expert.' Carmody v. Aho, 251 Minn. 19, 86 N.W.2d 692. * * *"

The issue here presented did not extend to matters so beyond the knowledge and comprehension of the average juror as to necessitate expert opinion testimony. Therefore, no abuse of discretion has been demonstrated. Superior Ice & Coal Co. v. Belger Cartage Service, Inc., 337 S.W.2d 897, 906 [9, 10] (Mo.1960); Parlow v. Dan Hamm Drayage Co., 391 S.W.2d 315, 325–326[14–16] (Mo.1965).

■ Inasmuch as no prejudicial error has been found, there is no necessity for consideration of the cumulative effect of error. Chism v. Cowan, 425 S.W.2d 942, 950 (Mo.1967).

Turning to the appeal of plaintiff against the estate of Baker, the single

question presented is whether or not the trial court erred in refusing to submit plaintiff's claim against the estate based upon negligence in operating an auto with defective brakes. Appellant Baker on this appeal argues that the defendant Baker estate relied upon the defective brakes of the Ford as the excuse for that vehicle's presence on the wrong side of the road and that such reliance necessarily acknowledged a violation of the brake statute (§ 307.170(3), RSMo 1969, V.A.M.S.), and thereby provided a basis for the submission of such violation as negligence per se, with the burden upon the estate to produce adequate excuse for the violation. Rice v. Allen, 309 S.W.2d 629 (Mo.1958). Respondent estate contends that the brake statute imposes the responsibility for compliance with it upon the owner of the vehicle, and that Mrs. Baker, who was not the owner, could be charged with negligence in operating the vehicle with defective brakes only if there was substantial and competent evidence that she knew or could have known of the defective condition of the brakes at the time of the collision.

Respondent acknowledges that no Missouri case has been found which squarely holds that the obligation to comply with the brake statute is that of the owner only. Neither Standard Oil Co. v. Leaverton, 239 Mo.App. 284, 192 S.W.2d 681 (1946), nor Plannett v. McFall, 284 S.W. 850 (Mo. App.1926), cited and relied upon by respondent, involved reliance on violation of the brake statute as negligence; nor did Wilson v. Union Construction Company, 336 S.W.2d 82 (Mo.1960), also cited and relied upon by respondent. Those cases do contain language indicating that the primary obligation to provide a motor vehicle with adequate brakes is upon the owner. None involved the question of whether, as to a third person, a non-owner driver may be charged with negligence based upon violation of the brake statute.

Although the question was not directly presented on the appeal to this court, the submission in Beezley v. Spiva, 313 S.W.2d 691 (Mo.1958), charged negligence to both the driver and the owner on the basis of violation of the brake statute. See also Allman v. Yoder, 325 S.W.2d 472, 476 [6, 7] (Mo.1959). In Virgil v. Riss & Co., Inc., 241 S.W.2d 96, 100 [4] (Mo.App. 1951), the court stated: "One of the requirements of the law which was binding on the defendant and all persons operating motor vehicles on the public highway is that all motor vehicles 'shall be provided at all times with two sets of adequate brakes, kept in good working order.' Section 304.-560, RSMo 1949 [§ 307.170(3), RSMo 1969]." That case dealt with the liability of a lessee of a motor vehicle and the statement regarding the obligation of all operators of motor vehicles was dictum.

■■ The obvious purpose of the brake law is to require that vehicles operated on the public highways have adequate brakes. The statute does speak in terms of being "provided" with two sets of brakes, but the concern of the legislature was to protect travelers on the highways from injury and damage caused by vehicles with defective brakes. The statute is not by its terms directed only at owners of vehicles and to so limit the statute would tend to defeat its purpose. The operator of a vehicle must bear responsibility for its defective brakes, subject to the right to have his violation excused by reason of "factors of excuse." Rice v. Allen, supra.

■ Applying such rule in this case, plaintiff did make a submissible case against the Baker estate, based upon the acknowledged fact that Lenora Baker was driving an auto with defective brakes. Her excuse, based upon the newness of the vehicle and other factors making for an "excused violation," was for the jury as a matter of defense.

Because the trial court failed to submit the claim against the Baker estate, based upon inadequate brakes, the judgment in favor of the estate must be reversed and the case remanded for retrial as to that defendant on the issue of liability only.

Judgment affirmed as to appellants Ford Motor Company and Wilson Lasater. Reversed as to respondent Raymond I. Baker, administrator of the estate of Lenora Baker, and cause remanded for new trial as to that defendant on issue of liability only.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.